259 P.3d 190 (2011)
BAINBRIDGE ISLAND POLICE GUILD and Steven Cain, Respondents,
v.
The CITY OF PUYALLUP, a municipal corporation, Defendant, and
Kim Koenig, an individual; and Lawrence Koss, an individual, Appellants.
Bainbridge Island Police Guild and Steven Cain, Respondents,
v.
The City of Mercer Island, a municipal corporation, Defendant, and
Kim Koenig, an individual; and Lawrence Koss, an individual; and Althea Paulson, an individual; and Tristan Baurick, an individual, Appellants.
Nos. 82374-0, 82803-2.
Supreme Court of Washington, En Banc.
Argued November 16, 2010.
Decided August 18, 2011.
*192 John Rolfing Muenster, Muenster & Koenig, Bainbridge Island, WA, Daniel P. Mallove, Daniel P. Mallove, PLLC, Seattle, WA, for Appellants.
Robert L. Christie, Ann Elizabeth Mitchell, Christie Law Group, PLLC, Seattle, WA, Steven M. Kirkelie, City of Puyallup, Puyallup, WA, Jeffrey Scott Myers, Law Lyman Daniel Kamerrer, et al., Olympia, WA, for Respondents.
Margaret Ji Yong Pak, Douglas B. Klunder, Seattle, WA, amicus counsel for ACLU.
Michele Lynn Earl-Hubbard, Christopher Roslaniec, Allied Law Group, LLC, Seattle, WA, amicus counsel for Allied Daily Newspapers of Washington, Center for Justice, Tacoma News Tribune, The Seattle Times, TriCity Herald, and Washington Newspapers Publishers Association.
William John Crittenden, Patrick Denis Brown, Seattle, WA, amicus counsel for Washington Coalition for Open Government.
FAIRHURST, J.
¶ 1 Appellants, Kim Koenig, Lawrence Koss, and Althea Paulson, seek direct review of two separate superior court orders enjoining disclosure of investigative records compiled by the cities of Puyallup and Mercer Island. Appellants argue that the records were wrongfully withheld. We remand these cases to the trial courts and direct them to order the production of the Puyallup criminal investigation report (PCIR) and the Mercer Island internal investigation report (MIIIR) with Bainbridge Island Police Officer Steven Cain's identity redacted.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 2 Koenig filed a complaint against Officer Cain alleging sexual assault and strangulation during the course of a traffic stop on September 30, 2007. Koenig alleged that Officer Cain sexually assaulted her by pinning her against a car and rubbing his crotch against hers. Koenig also claimed that Officer *193 Cain choked her until she defecated out of fear. Bainbridge Island Police Chief Matt Haney asked the Puyallup Police Department to conduct a criminal investigation and the Mercer Island Police Department to conduct an internal investigation into Officer Cain's conduct.
¶ 3 The Puyallup Police Department forwarded the results of its criminal investigation to the Kitsap County Prosecuting Attorney for review. Relying on the PCIR, the prosecutor declined to initiate any charges against Officer Cain, because there was "not sufficient evidence to establish that there was any inappropriate behavior by this police officer." Clerk's Papers (CP) (Puyallup) at 72. The MIIIR yielded similar results, recommending that Officer Cain be "EXONERATED."[1] CP (Mercer Island) at 66. After receiving the MIIIR and the PCIR, Chief Haney closed the case and informed Officer Cain that each investigation found the allegations "unsubstantiated." CP (Puyallup) at 70.
¶ 4 In February 2008, Bainbridge Island received multiple public records requests for the MIIIR and the PCIR, including requests from Tristan Baurick, a reporter from the Kitsap Sun, and Paulson, author of the Bainbridge Notebook blog. Paulson was permitted to view the PCIR as "non-conviction data," and Bainbridge Island informed her that the MIIIR would be produced absent an injunction. CP (Puyallup) at 131-32.
¶ 5 On March 31, 2008, Puyallup notified Officer Cain that Baurick had also submitted a public records request to Puyallup for the PCIR. Puyallup disagreed that the PCIR was nonconviction data, and informed Officer Cain that it intended to produce the PCIR absent an order enjoining release. No injunction was obtained and the PCIR was produced for Baurick.
¶ 6 The Bainbridge Island Police Guild (BIPG) and Officer Cain filed a complaint in the Kitsap County Superior Court to prevent Bainbridge Island from providing the MIIIR and the PCIR to Paulson and Baurick. Neither Mercer Island nor Puyallup was joined as a party. Judge Russell W. Hartman reviewed the documents in camera and ruled that production of any portion of the reports would violate Officer Cain's right to privacy. Therefore, both the PCIR and the MIIIR were withheld under the investigative report exemption of the Public Records Act (PRA), RCW 42.56.240(1). However, the court refused to enjoin the Kitsap Sun from publishing an article based on the PCIR produced by Puyallup for Baurick because Puyallup was not a party to the case.
¶ 7 On May 11, 2008, the Kitsap Sun published an article describing the allegations and identifying Officer Cain in connection to them. Additional articles were also published in the Bainbridge Islander newspaper, the Bainbridge Review newspaper, and many Internet sources.
¶ 8 In June and July 2008, Koss and Koenig separately submitted public records requests to Puyallup for the PCIR. On July 18, 2008, Officer Cain and BIPG moved in the Pierce County Superior Court to enjoin Puyallup from producing the PCIR. The court denied a temporary injunction and Puyallup released the report to Koss and Koenig. However, the court later ruled that the entire report was exempt from production under the personal information exemption, former RCW 42.56.230(2) (2010). The entire report was exempted, not just Officer Cain's name, because the request was specific to information regarding the investigation of Koenig's allegation against Officer Cain, and thus any production would reveal his identity in connection with the incident. Koss and Koenig were ordered to return the report to Puyallup.
¶ 9 Koss and Koenig appealed the Pierce County Superior Court order directly to this court. Meanwhile, Koss, Koenig, Baurick, and Paulson all submitted public records requests to Mercer Island for the MIIIR. Officer Cain and BIPG moved in the King County Superior Court to enjoin production, and the injunction was again granted for the entirety of both reports. Koenig, Koss, and Paulson appealed the King County Superior Court order directly to this court. Because both appeals involve a public records request for the same reports held by different agencies, *194 involving the same underlying facts, the cases were consolidated for review.

II. ISSUES
A. Under the PRA, did the trial court properly grant injunctive relief preventing production of the entire PCIR and MIIIR?
B. Under the Washington State Criminal Records Privacy Act (CRPA), chapter 10.97 RCW, did the trial court properly grant injunctive relief preventing production of the entire PCIR and MIIIR?

III. ANALYSIS

A. PRA

¶ 10 Under the PRA, appellants argue that the trial court erroneously granted Officer Cain and the BIPG's motion for injunctive relief to prevent production of the entire PCIR and MIIIR. If an agency intends to produce public records for a requester, an interested third party may seek to enjoin production under RCW 42.56.540.[2] Judicial review under the PRA and this injunction statute is de novo. RCW 42.56.550(3); Spokane Police Guild v. Liquor Control Bd., 112 Wash.2d 30, 34-35, 769 P.2d 283 (1989). Where the record consists only of affidavits, memoranda of law, other documentary evidence, and where the trial court has not seen or heard testimony requiring it to assess the witnesses' credibility or competency, we are not bound by the trial court's factual findings and stand in the same position as the trial court. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 252-53, 884 P.2d 592 (1994) (PAWS).
¶ 11 The PRA requires state and local agencies to produce all public records upon request, unless the record falls within a PRA exemption or other statutory exemption. RCW 42.56.070(1); PAWS, 125 Wash.2d at 250, 884 P.2d 592. To the extent necessary to prevent an unreasonable invasion of personal privacy interests protected by the PRA, the agency shall redact identifying details and produce the remainder of the record. RCW 42.56.070(1). The party seeking to enjoin production bears the burden of proving an exemption or statute prohibits production in whole or in part. Spokane Police Guild, 112 Wash.2d at 35, 769 P.2d 283.
¶ 12 The PRA is "a strongly worded mandate for broad disclosure of public records." Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978).
The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created.
RCW 42.56.030. Therefore, the PRA is to be "liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected." Id.
¶ 13 The parties to this case do not dispute that the PCIR and the MIIIR are public records falling within the PRA.[3] Therefore, we must decide whether any exemptions apply to prevent production of either report. If an exemption does apply, we then decide whether the trial court properly enjoined production of the PCIR and the MIIIR under the injunction requirements *195 of RCW 42.56.540. Both trial courts in these consolidated cases granted the motions for injunction under the personal information exemption, former RCW 42.56.230(2).[4] Additionally, the BIPG and Officer Cain argue that the investigative records exemption, RCW 42.56.240(1),[5] also exempts the PCIR and the MIIIR from production. Before analyzing both of these exemptions, and whether an injunction order was proper under RCW 42.56.540, we must decide if Officer Cain has waived his right to argue that either exemption applies.

1. Waiver

¶ 14 Appellants argue that Officer Cain waived his right to privacy by failing to object to Baurick's initial public records request for the PCIR, having received notice of that request. The PRA itself does not provide for waiver of a claimed exemption. Instead, the PRA mandates that state and local agencies produce all public records upon request, unless the record falls within a specific PRA exemption or other statutory exemption. RCW 42.56.070(1). Neither the personal information exemption nor the investigative records exemption expressly requires a person to object to every single public records request that might occur in order to preserve the exemption for future requests. See former RCW 42.56.230(2), RCW 42.56.240(1).
¶ 15 Finding no statutory authority for appellants' waiver argument, we turn to the common law doctrine of waiver.
The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled. A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement or be inferred from circumstances indicating an intent to waive. It is a voluntary act which implies a choice, by the party, to dispense with something of value or to forego [sic] some advantage. The right, advantage, or benefit must exist at the time of the alleged waiver. The one against whom waiver is claimed must have actual or constructive knowledge of the existence of the right. He must intend to relinquish such right, advantage, or benefit; and his actions must be inconsistent with any other intention than to waive them.
Bowman v. Webster, 44 Wash.2d 667, 669, 269 P.2d 960 (1954).[6] Officer Cain's actions are inconsistent with an intent to waive his right to privacy. The first PRA request for the PCIR and the MIIIR occurred in February 2008. Officer Cain and the BIPG objected to that production, and the Kitsap County Superior Court ruled that both the PCIR and the MIIIR were exempt from production. In hindsight, Officer Cain should have either joined Puyallup in the Kitsap County action to prevent Bainbridge Island's production, or Officer Cain should have filed a separate action to enjoin production by Puyallup, but Officer Cain did neither. What Officer Cain did do was continue a legal battle to prevent the production of both the PCIR and the MIIIR by Bainbridge Island. Officer Cain *196 and the BIPG's lawsuit against Bainbridge Island to prevent production is consistent with an intention to protect Officer Cain's right to privacy, not to forever waive it.
¶ 16 The failure to object to a single public records request is only a relinquishment of the right to prevent that specific production. It is not an intentional and voluntary relinquishment of a person's right to privacy regarding all future requests for that document. The fact that Officer Cain failed to prevent the production of the PCIR and the MIIIR for Baurick and the Kitsap Sun newspaper should not mean he is forever prohibited from protecting his right to privacy. We hold that Officer Cain has not waived his right to privacy and proceed with an analysis of whether a PRA exemption bars release of the PCIR and the MIIIR.[7]

2. Former RCW 42.56.230(2)the personal information exemption

¶ 17 The trial court erroneously ruled that the personal information exemption prohibited production of the entire PCIR and MIIIR. The PRA exempts from production "[p]ersonal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." Former RCW 42.56.230(2). To determine whether the PCIR and the MIIIR fall within this exemption, we must first decide (a) whether the reports constitute personal information, (b) whether Officer Cain has a right to privacy in his identity, and (c) whether the production of Officer Cain's identity in connection with the alleged and unsubstantiated sexual misconduct would violate that right to privacy. Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405, 164 Wash.2d 199, 210, 189 P.3d 139 (2008).

(a) Personal information

¶ 18 The PCIR and the MIIIR constitute personal information under former RCW 42.56.230(2). Although not defined in the PRA, we have defined "personal information" as "information relating to or affecting a particular individual, information associated with private concerns, or information that is not public or general." Bellevue John Does, 164 Wash.2d at 211, 189 P.3d 139.[8] In Bellevue John Does, we held that a teacher's identity in connection with an unsubstantiated allegation of sexual misconduct is "personal information" under former RCW 42.56.230(2). 164 Wash.2d at 211-12, 189 P.3d 139.
¶ 19 Similar to Bellevue John Does, a police officer's identity in connection with an allegation of sexual misconduct is also personal information under former RCW 42.56.230(2). Neither party asserts a reasonable basis to distinguish our case from Bellevue John Does on this issue. We hold that the PCIR and MIIIR contain personal information.

(b) Right to privacy

¶ 20 Appellants argue that Officer Cain has no right to privacy in his identity under the PRA because his identity in connection with the unsubstantiated allegations was already released to the media without Officer Cain's objection. We are not persuaded *197 that a person's right to privacy, as interpreted under the PRA, should be forever lost because of media coverage.
¶ 21 Personal information is exempt from production only when that production violates an employee's right to privacy. Former RCW 42.56.230(2). RCW 42.56.050 sets forth the test for determining when the right to privacy is violated,[9] but does not explicitly identify when the right to privacy exists. Bellevue John Does, 164 Wash.2d at 212, 189 P.3d 139. In Bellevue John Does, we held that teachers have a right to privacy in their identities in connection with an unsubstantiated allegation of sexual misconduct, because the unsubstantiated allegations are matters concerning the teachers' private lives. Id. at 215-16, 189 P.3d 139. In our case, the PCIR resulted in the allegations being found "unsubstantiated," and the MIIIR "EXONERATED" Officer Cain. CP (Puyallup) at 70; CP (Mercer Island) at 66. Under the precedent established in Bellevue John Does, Officer Cain has a right to privacy in his identity in connection with Koenig's unsubstantiated allegation of sexual misconduct.[10] Therefore, we must turn to the question of whether that right to privacy was eliminated by media coverage of the incident stemming from the initial disclosure of the PCIR by Puyallup.
¶ 22 Under the PRA, Officer Cain maintains his right to privacy in his identity, regardless of the media coverage of this unsubstantiated allegation. An agency should look to the contents of the document, and not the knowledge of third parties when deciding if the subject of a report has a right to privacy in their identity. Even though a person's identity might be redacted from a public record, the outside knowledge of third parties will always allow some individuals to fill in the blanks. But just because some members of the public may already know the identity of the person in the report, it does not mean that an agency does not violate the person's right to privacy by confirming that knowledge through its production.
¶ 23 We also must note the practical effect on the agency if we were to hold that Officer Cain has no right to privacy in his identity. Under such a holding, agencies will be required to engage in an analysis of not just the contents of the report but the degree and scope of media coverage regarding the incident. Exactly how much media coverage is required before we will rule that an individual's right to privacy is lost? Agencies will be placed in the position of making a fact-specific inquiry with uncertain guidelines. If the agency incorrectly finds that there has been little media coverage and exempts from disclosure the identity of the subject of the *198 report, the agency could face significant statutory penalties. See former RCW 42.56.550(4) (2005). Puyallup filed a separate brief in this action requesting a bright line rule enabling government agencies to fulfill their duty under the PRA while protecting an individual's right to privacy. Denying the existence of a right to privacy on the basis of the extent of media coverage is likely to result in incorrect assessments and potentially significant costs to the agency. We hold that Officer Cain has a right to privacy in his identity, regardless of the media coverage stemming from the production of the PCIR.

(c) Violation of the right to privacy

¶ 24 Appellants argue that even if we hold that Officer Cain has a right to privacy in his identity in connection to the unsubstantiated allegation of sexual misconduct, that right to privacy is not violated by production of the PCIR or the MIIIR with Officer Cain's name redacted. "A person's `right to privacy' ... is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.56.050.

(1) Highly offensive

¶ 25 Appellants argue that production of Officer Cain's identity in connection with the unsubstantiated accusation of sexual misconduct is not highly offensive to a reasonable person. "[T]he offensive nature of disclosure does not vary depending on whether the allegation is substantiated or unsubstantiated," but "is implicit in the nature of an allegation of sexual misconduct." Bellevue John Does, 164 Wash.2d at 216 n. 18, 189 P.3d 139. In Bellevue John Does, we held that it was highly offensive to reveal a teacher's identity in connection with an accusation of sexual misconduct. Id. at 216, 189 P.3d 139. For the purposes of determining whether the production is highly offensive, there is no reason to distinguish an allegation of sexual misconduct against a police officer from an allegation of sexual misconduct against a teacher. We hold that revealing Officer Cain's identity in connection with Koenig's unsubstantiated allegation of sexual misconduct is highly offensive to a reasonable person.

(2) Legitimate public concern

¶ 26 Appellants argue that the trial court's withholding of the entire PCIR and MIIIR unlawfully denied access to a matter of legitimate public concern: an agency's response to an allegation of sexual misconduct. In Bellevue John Does, we held that the public has no legitimate interest in finding out the identity of someone accused of an unsubstantiated allegation of sexual misconduct. Id. at 221, 189 P.3d 139. Because the public records request in this case was specific to the PCIR and the MIIIR involving Officer Cain and Koenig, the trial courts found that any production of the PCIR or the MIIIR in connection with this specific request would necessarily reveal Officer Cain's identity in connection with the unsubstantiated allegation. However, we have recognized "when allegations of sexual misconduct are unsubstantiated, the public may have a legitimate concern in the nature of the allegation and response of the school system to the allegation." Id. at 217 n. 19, 189 P.3d 139.[11]
¶ 27 Although lacking a legitimate interest in the name of a police officer who is the subject of an unsubstantiated allegation of sexual misconduct, the public does have a legitimate interest in how a police department responds to and investigates such an allegation against an officer. The reports in this case not only identify Officer Cain, they reveal the nature of the Mercer Island and Puyallup Police Departments' investigations of this allegation. Under RCW 42.56.050, the trial court erred by exempting the entire PCIR and MIIIR, rather than producing the report with only Officer Cain's identity redacted.
*199 ¶ 28 We have previously permitted production of a similarly redacted report even though redaction of only the person's name was insufficient to protect the person's identity. See Koenig v. City of Des Moines, 158 Wash.2d 173, 142 P.3d 162 (2006). In Koenig the public records exemption at issue, former RCW 42.17.31901 (1992), specifically exempted "`[i]nformation revealing the identity of child victims of sexual assault.'" 158 Wash.2d at 181, 142 P.3d 162. However, unlike former RCW 42.56.230(2), former RCW 42.17.31901 went on to define "[i]dentifying information" as "the child victim's name, address, location, photograph, and in cases in which the child victim is a relative or stepchild of the alleged perpetrator, identification of the relationship between the child and the alleged perpetrator." In Koenig, the requestor had submitted a public records request specific to Jane Doe, a child victim of sexual assault. 158 Wash.2d at 178, 142 P.3d 162. Just like our current case, any production of the records of the assault whatsoever would identify Jane Doe as a child victim of sexual assault, even if her name were redacted. Relying on the express language of the statute, the court held that the provision exempted only the enumerated pieces of identifying information and not the entire report. Id. at 182, 142 P.3d 162. The majority noted the dissent's concern that the result would encourage "`fishing expedition[s]'" and speculation about victims' identities in filing public records requests. Id. at 184, 142 P.3d 162. However, the majority held that it was bound by the unambiguous text of former RCW 42.17.31901, and ordered the records production with only the enumerated identifying information redacted.
¶ 29 Although former RCW 42.56.230(2) does not enumerate specific types of identifying information that must be redacted, we are placed in the same position of being unable to completely protect the identity of an individual in a public record. Under RCW 42.56.050, a person's "`right to privacy'... is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not [a matter] of legitimate concern." (Emphasis added.) The PCIR and MIIIR include matters of legitimate public concern because they include information regarding police departments' investigations of an allegation of sexual misconduct. Because the nature of the investigations is a matter of legitimate public concern, disclosure of that information is not a violation of a person's right to privacy.[12] Because it is not a violation of a person's right to privacy, it does not fall into the category of "personal information" exempt under former RCW 42.56.230(2). We recognize that appellants' request under these circumstances may result in others figuring out Officer Cain's identity. However, it is unlikely that these are the only circumstances in which the previously existing knowledge of a third party, paired with the information in a public records request, reveals more than either source would reveal alone. We hold that while Officer Cain's identity is exempt from production under former RCW 42.56.230(2), the remainder of the PCIR and the MIIIR is nonexempt.[13]
¶ 30 The dissent asserts our holding today is "inconsistent" with this court's decision in Bellevue John Does, or that we are somehow *200 treating "the privacy rights of [police] officers differently from the privacy rights of teachers." Dissent at 206. This is simply inaccurate. Here, we exempt from production Officer's Cain name and identifying information while disclosing the remainder of the report dealing with the departments' investigations into the allegation. In Bellevue John Does, we exempted the name and identifying information of the teachers from production, while permitting disclosure of portions of the "documents related to the allegations and investigations (subject to redactions), thus maintaining the citizens' ability to inform themselves about school district operations." 164 Wash.2d at 222, 189 P.3d 139. Our analysis here is consistent with the analysis in Bellevue John Does.

3. RCW 42.56.240(1)the investigative records exemption

¶ 31 Although conceding that both exemptions turn on the issue of Officer Cain's right to privacy, BIPG and Officer Cain argue that the investigative records exemption under RCW 42.56.240(1), exempts the entire PCIR and MIIIR from production. RCW 42.56.240 provides:
The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under this chapter:
(1) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.
¶ 32 The PCIR and MIIIR are clearly investigative records compiled by law enforcement. See Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 729, 748 P.2d 597 (1988) (holding that law enforcement internal investigation records meet the first criterion of investigative records exemption); Cowles Publ'g Co. v. Spokane Police Dep't, 139 Wash.2d 472, 477-78, 987 P.2d 620 (1999) (investigative records exemption applies to criminal investigative records so long as the other criteria of the exemption are met). The PCIR was part of a criminal investigation of Officer Cain, and the MIIIR was compiled by Mercer Island Police after the Bainbridge Island police chief vested Mercer Island with the responsibility of deciding whether Officer Cain should be disciplined.
¶ 33 The BIPG and Officer Cain do not argue that the PCIR and the MIIIR are essential to effective law enforcement, but only that withholding the reports is essential for the protection of Officer Cain's right to privacy. The analysis here is identical to the right to privacy analysis in the personal information exemption. See Spokane Police Guild, 112 Wash.2d at 37-38, 769 P.2d 283. Therefore, only Officer Cain's identity is exempt under the PRA and should be redacted. Subject to those redactions, the remainder of the PCIR and the MIIIR, including the nature of the agencies' response to the allegation, are nonexempt.

4. RCW 42.56.540

¶ 34 Regardless of the applicability of the exemptions, appellants argue that procedurally the trial courts' injunctions preventing production of the PCIR and the MIIIR are invalid under RCW 42.56.540. RCW 42.56.540 authorizes a court order enjoining production of a public record falling under a PRA exemption if the superior court finds that such production "would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions." Therefore, "[t]he court must find that a specific exemption applies and that disclosure would not be in the public interest and would substantially and irreparably damage a person." Yakima County v. Yakima Herald-Republic, 170 Wash.2d 775, 808, 246 P.3d 768 (2011) (citing Soter v. Cowles Publ'g Co., 162 Wash.2d 716, 757, 174 P.3d 60 (2007)).
¶ 35 For the same reasons that continued production of the portions of the PCIR and MIIIR containing Officer Cain's identity would be highly offensive, we hold the continued production of the PCIR and the MIIIR in unredacted form would substantially and irreparably damage Office Cain. Moreover, *201 although the public clearly has an interest in the nature of a police department's response to an allegation of sexual misconduct, production of the PCIR and the MIIIR with only Officer Cain's identity redacted would not infringe upon that interest. Under RCW 42.56.540, and the PRA exemptions enumerated in former RCW 42.56.230(2) and RCW 42.56.240(1), we remand to the trial courts for production of the PCIR and the MIIIR after redaction of Officer Cain's identity.[14]

B. CRPA

¶ 36 As an alternative basis to the PRA, the BIPG and Officer Cain argue that the CRPA, chapter 10.97 RCW, exempts the PCIR from production, and to the extent it contains the PCIR, the MIIIR as well. The court's objective when construing a statute is to determine the legislature's intent. In re Pers. Restraint of Cruze, 169 Wash.2d 422, 427, 237 P.3d 274 (2010). The plain meaning is to be discerned from the ordinary meaning of the language, as well as the context of the statute where that provision is found, related provisions, and the statutory scheme as a whole. Id. CRPA generally provides for the "completeness, accuracy, confidentiality, and security of criminal history record information." RCW 10.97.010. RCW 10.97.080 states in pertinent part:
No person shall be allowed to retain or mechanically reproduce any nonconviction data except for the purpose of challenge or correction when the person who is the subject of the record asserts the belief in writing that the information regarding such person is inaccurate or incomplete. The provisions of chapter 42.56 RCW shall not be construed to require or authorize copying of nonconviction data for any other purpose.
(Emphasis added.) RCW 10.97.080 bars only the retention and copying of nonconviction data, therefore it would not prevent appellants from viewing or inspecting the nonconviction data. Hudgens v. City of Renton, 49 Wash.App. 842, 844-45, 746 P.2d 320 (1987). As for their right to retain or copy, "`[n]onconviction data'" is defined as

all criminal history record information relating to an incident which has not led to a conviction or other disposition adverse to the subject, and for which proceedings are no longer actively pending. There shall be a rebuttable presumption that proceedings are no longer actively pending if more than one year has elapsed since arrest, citation, charge, or service of warrant and no disposition has been entered.
RCW 10.97.030(2) (emphasis added). Nonconviction data only includes "`[c]riminal history record information,'" which is defined as
information contained in records collected by criminal justice agencies, other than courts, on individuals, consisting of identifiable descriptions and notations of arrests, detentions, indictments, informations, or other formal criminal charges, and any disposition arising therefrom, including acquittals by reason of insanity, dismissals based on lack of competency, sentences, correctional supervision, and release.
The term includes information contained in records maintained by or obtained from criminal justice agencies, other than courts, which records provide individual identification of a person together with any portion of the individual's record of involvement in the criminal justice system as an alleged or convicted offender.
RCW 10.97.030(1). The PCIR did not arise from an arrest, detention, indictment, or other formal criminal charge, and would not include any "descriptions and notations" of those events. Therefore, the PCIR does not contain any criminal history record information *202 beyond the individual identification of Officer Cain as the alleged offender.
¶ 37 The BIPG and Officer Cain cite to Hudgens as authority for the proposition that RCW 10.97.080 exempts an entire record such as the PCIR from production if it contains any criminal history record information. In Hudgens, the Court of Appeals declared, without analysis, that police investigative records relating to an arrest were exempt from retention and copying under RCW 10.97.080. 49 Wash.App. at 844-45, 746 P.2d 320. We reject that interpretation, and hold that RCW 10.97.080 requires redaction of only criminal history record information. In other words, the statute does not exempt information relating to the conduct of the police during the investigation. See Lynette Meachum, Private Rap Sheet or Public Record? Reconciling the Disclosure of Nonconviction Information Under Washington's Public Disclosure and Criminal Records Privacy Acts, 79 WASH. L.REV. 693 (2004).
¶ 38 Interpreting criminal history record information as not including all the contents of an investigative record is also consistent with the surrounding statutory context. "Statutes in pari materia should be harmonized so as to give force and effect to each and this rule applies with peculiar force to statutes passed at the same session of the Legislature." Int'l Commercial Collectors, Inc. v. Carver, 99 Wash.2d 302, 307, 661 P.2d 976 (1983) (citing State ex rel. Oregon R.R. & Nav. Co. v. Clausen, 63 Wash. 535, 540, 116 P. 7 (1911)). The first paragraph of RCW 10.97.080 explicitly draws a distinction between criminal history record information and "data contained in ... investigative ... files." Moreover, companion legislation enacted during the same legislative session as RCW 10.97.080 draws the same distinction:
"Criminal history record information" includes, and shall be restricted to identifying data and information recorded as the result of an arrest or other initiation of criminal proceedings and the consequent proceedings related thereto. "Criminal history record information" shall not include intelligence, analytical, or investigative reports and files.
RCW 43.43.705 (emphasis added); LAWS OF 1977, 1st Ex.Sess., ch. 314, § 14. RCW 43.43.705 establishes the Washington State Patrol as the central clearinghouse for criminal history record information in Washington. We interpret "criminal history record information" in a manner consistent with RCW 43.43.705, holding that it does not include the entire investigative report. In the context of the PCIR, RCW 10.97.080 requires nothing more than redaction of Officer Cain's identity in connection with the allegation, but the PCIR's description of the police department's investigation is not criminal history record information and must be produced.

IV. CONCLUSION
¶ 39 We reverse the trial courts. On remand, the trial courts should redact Officer Cain's identity and produce the remainder of the PCIR and MIIIR consistent with this opinion.
WE CONCUR: GERRY L. ALEXANDER, TOM CHAMBERS, and SUSAN OWENS, Justices.
MADSEN, C.J. (concurring/dissenting).
¶ 40 While I agree with the lead opinion that the Puyallup criminal investigation report and the Mercer Island internal investigation report must be produced, I do not agree that redaction of Bainbridge Island Police Officer Steven Cain's identity is proper under the Public Records Act (PRA or Act), chapter 42.56 RCW. The trial court's grant of an injunction should be reversed and the reports should be produced in their entirety because the Bainbridge Island Police Guild and Officer Cain have failed to establish that either the personal information exemption or the investigative records exemption of the PRA applies to prevent production of the reports in full.
¶ 41 The lead opinion misconstrues the privacy exemption to apply to the identity of a police officer who is alleged to have engaged in sexual misconduct occurring during the course of performing public duties. Such allegations in no way involve the details of one's personal and private life and do not implicate Officer Cain's privacy interests. *203 Accordingly, I disagree with the lead opinion's refusal to direct full disclosure of the criminal and internal investigation reports.

Analysis
¶ 42 The PRA is an expression of intent that public records must be available so that the people are informed and, consequently, are able to maintain control over the instruments of the government they have created. RCW 42.56.030. Chapter 42.56 RCW "shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected." Id.; Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405, 164 Wash.2d 199, 209, 189 P.3d 139 (2008). There must be a very good reason to disregard the public mandate of openness in governmenta mandate that unquestionably includes public servants' performance of their official public duties.
¶ 43 In fact, public records relating to alleged misconduct of public servants and how government agents investigate such allegations are quintessential examples of the kind of information that the PRA opens to public scrutiny. The public has the right to know about allegations of such misconduct, investigation into alleged misconduct, and corrective measures that may have been taken. Only by access to this kind of information can the people assure integrity of government action. "The basic purpose of the public disclosure act is to provide a mechanism by which the public can be assured that its public officials are honest and impartial in the conduct of their public offices." Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 719, 748 P.2d 597 (1988).
¶ 44 The lead opinion correctly concludes that the investigative records must be disclosed in this case. However, the lead opinion then undercuts its holding by erroneously limiting disclosure through its holding that the public servant's name must be redacted from the records. This limitation does not comport with the letter or the spirit of the PRA.
¶ 45 The exemptions from disclosure claimed in this case do not justify nondisclosure. The personal information exemption under former RCW 42.56.230(2) (2010)[1] applies to "[p]ersonal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." The investigative records exemption under RCW 42.56.240(1) applies, in relevant part, to "specific investigative records compiled by investigative [and] law enforcement... agencies ... vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential... for the protection of any person's right to privacy." In the circumstances here, both of these exemptions turn on whether Cain's right to privacy is implicated by the disclosure requests. If it is not, then neither exemption applies.
¶ 46 The meaning of the term "right to privacy" (or "privacy right") in the PRA was written into the Act in 1987 when the legislature expressly agreed that this court's adoption in Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978), of the common law right to privacy standard of the Restatement (Second) of Torts § 652D, at 383 (1977) correctly sets forth the appropriate standard for the right to privacy. Laws of 1987, ch. 403, § 1. The legislature stated: "[T]o avoid unnecessary confusion, `privacy' as used in [RCW 42.56.050[2]] is intended to have the same meaning as the definition given that word by the Supreme Court in `Hearst.'" The legislature thus wrote RCW 42.56.050 to state that "A person's `right to privacy,' `right of privacy,' `privacy,' or 'personal privacy,' as these terms are used in this chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." Laws of 1987, ch. 403, § 2. There is no general right to privacy under the PRA.
¶ 47 As the court in Hearst explained, under Restatement (Second) of Torts § 652D, *204 the information that is protected from disclosure concerns private facts as described in comment b to § 652D:
Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.
¶ 48 The lead opinion ignores this definition, saying that the PRA only tells when the right is violated and not when it exists, citing Bellevue John Does, 164 Wash.2d at 212, 189 P.3d 139. The problem with the conclusion here, as in Bellevue John Does, is that the legislature did not believe that it identified only when the right is violated. Rather, as stated, the legislature expressly said that it intended the term to have the same meaning as set out in Hearst, which is the common law meaning. This court reached the same conclusion following Hearst. E.g., Spokane Police Guild v. Liquor Control Bd., 112 Wash.2d 30, 38, 769 P.2d 283 (1989) ("[t]he right of privacy is commonly understood to pertain only to the intimate details of one's personal and private life").
¶ 49 In fact, in Bellevue John Does itself, 164 Wash.2d at 212, 189 P.3d 139, the court actually affirmed that "[i]n Hearst, we defined `right to privacy' ... by looking to the common law tort of invasion of privacy by public disclosure of private facts" and "[w]e adopted the definition of `invasion of privacy' as provided in" § 652D. (Emphasis added.) The court stated that "[a] person has a right to privacy in `"matters[s] concerning the private life."'" Bellevue John Does, 164 Wash.2d at 212, 189 P.3d 139 (second alteration in original) (quoting Hearst, 90 Wash.2d at 135, 580 P.2d 246 (quoting Restatement (Second) of Torts § 652D)). The court explicitly stated that comment b to § 652D "illustrates the nature of facts that could be considered matters concerning the private life." Id.
¶ 50 Without regard to the legislature's express reference to the definition in Hearst and without regard to Hearst, Spokane Police Guild, and Bellevue John Does itself, the lead opinion says that the legislature has not identified what constitutes matters within the right to privacy.
¶ 51 Applying the complete and correct definition from Hearst, nothing about the situation or circumstances under which the misconduct allegedly occurred in this case involves any matters that would come within the common law's understanding of privacy rights embodied in § 652D. The investigative reports concern allegations about misconduct occurring on a public highway while Officer Cain was on duty and engaged in his public duty of law enforcement.[3]
¶ 52 Nor does it matter that the allegations were not confirmed. They have to do only with his official capacity and on-the-job conduct.
¶ 53 The lead opinion is able to reach a different conclusion as a result of its determination that this case is no different from Bellevue John Does, which involved public records relating to allegations that teachers committed acts of sexual misconduct against students. In that case, the court held that investigative reports into the allegations must be disclosed but the teachers' names redacted. The court in Bellevue John Does stressed the significance of possible negative reaction when deciding whether disclosure of the teachers' names was required. Bellevue John Does, 164 Wash.2d at 215, 189 P.3d 139. The court said in Bellevue John Does that "[t]he fact of the allegation, not the underlying conduct, does not bear on the teacher's *205 performance or activities as a public servant"; "the allegation of sexual misconduct toward a minor may hold the teacher up to hatred and ridicule in the community"; and an unsubstantiated allegation is a "`matter concerning the private life' within the Hearst definition." Id. (quoting Hearst, 90 Wash.2d at 135, 580 P.2d 246).
¶ 54 Unfortunately, this analysis never explains why there was a personal privacy right at issue. Public reaction to unsubstantiated allegations does not establish whether a privacy right exists. Significant adverse reaction would exist in the case of allegations of a teacher's sexual abuse of a student whether the allegation is substantiated or not, and therefore whether an allegation is substantiated cannot be a legitimate distinguishing factor. And if the intended point is that an individual should not be subject to unsubstantiated allegations, that reasoning fails to come to grips with the first question that has to be answeredwhether a privacy right exists in the subject matter of the allegations.
¶ 55 The lead opinion should not rely on the analysis in Bellevue John Does, because although that case in fact contains the correct definition of what personal matters come within privacy rights, the definition is ignored in the analysis.
¶ 56 For this reason and for other reasons I explained in my dissent in Bellevue John Does, the court's analysis and result in that case is difficult to harmonize with the PRA and our other cases. Id. at 228-41, 189 P.3d 139 (Madsen, J., dissenting). Further, as explained above, the court's holding in Bellevue John Does does not conform to the court's own recognition that the definition of privacy rights involves one's personal, private affairs that would not ordinarily be shared. Whether substantiated or not, allegations of public misconduct while performing public duties do not concern an individual's personal privacy interests.
¶ 57 Here, nothing about Officer Cain's conduct, whether substantiated or not, or about the investigation itself, concerns his personal privacy rights. The embarrassment or negative attention that might be focused on him by disclosure of his identity would not arise because of disclosure of anything relating to his personal life or characteristics, but would be wholly concerned with the performance of public duties and allegations arising wholly in connection with those public duties. The lead opinion confuses negative publicity and adverse reaction upon public disclosure with privacy rights. They are not the same, as this court and the legislature have both previously recognized.
¶ 58 The lead opinion fails to follow the express language of the PRA, the legislature's express statements about what is meant by privacy rights in the PRA, and the common law definition of the term that is the meaning intended. The court should conclude that Officer Cain's privacy rights are not implicated by the requested disclosure.
¶ 59 The lead opinion's resolution of this case also fails to follow the spirit of the law. The legislature commanded that the PRA is to be construed as "`a strongly worded mandate for broad disclosure of public records'" that must be liberally construed to effectuate this intent. Id. at 209, 189 P.3d 139 (quoting Hearst, 90 Wash.2d at 127, 580 P.2d 246); see RCW 42.56.030. The lead opinion has not followed this command. It has failed to heed the principle of construction embodied in the Act that exemptions are to be narrowly construed. RCW 42.56.030. The lead opinion has expansively construed the privacy exemptions at issue by weighing the strength of possible embarrassment and adverse reaction and ignoring the real meaning of privacy interest.
¶ 60 Because Officer Cain's personal, private interests are not implicated under the circumstances, there is no reason to ask whether disclosure of the reports "[w]ould be highly offensive to a reasonable person" and "not of legitimate concern to the public." RCW 42.56.050. Under the PRA, these issues do not arise in the absence of a cognizable privacy interest at stake.

Conclusion
¶ 61 I agree that the investigative reports at issue must be disclosed under the PRA, but I cannot agree that Officer Cain's identity must be redacted. The lead opinion's analysis does not follow the PRA and the *206 legislature's intent as to what is meant by "privacy interest." Instead, the lead opinion gives undue weight to the potential for negative reaction upon disclosure. That is not the proper focus in a case under the PRA.
WE CONCUR: CHARLES W. JOHNSON, DEBRA L. STEPHENS, Justices, and RICHARD B. SANDERS, Justice Pro Tem.
J.M. JOHNSON, J. (dissenting).
¶ 62 The Puyallup criminal investigation report (PCIR) and the Mercer Island internal investigation report (MIIIR) fit squarely within the Public Records Act[1] (PRA) exemption for investigative records and should not be disclosed at all. In this case, where some investigative records have already been disclosed, and information connecting the individual officer to unsubstantiated allegations has already been made public, further disclosure of the investigative records in any form invades and violates the individual officer's right to privacy.
¶ 63 The lead opinion's holding is inconsistent with our most relevant recent decision, Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405, 164 Wash.2d 199, 215, 189 P.3d 139 (2008). Although the public has a legitimate interest in how a police department responds to and investigates a false or unsubstantiated allegation, there is no reason to treat the privacy rights of officers differently from the privacy rights of teachers, who are also public servants. I dissent.

FACTS
¶ 64 The Puyallup Police Department and the Mercer Island Police Department conducted separate investigations in response to a complaint by a cited defendant who alleged sexual assault by an officer during her arrest. Both investigations found the claim to be unsubstantiated, and the Mercer Island Police Department recommended that the officer be "EXONERATED."[2] The PCIR, however, was briefly released and articles were published in print and on-line connecting the officer with the incident.
¶ 65 The Bainbridge Island Police Guild (Guild) and the arresting officer moved for injunctive relief to prevent further disclosure of the PCIR and the MIIIR. The court reviewed the PCIR and the MIIIR in camera, and then concluded that the "investigations were both very thorough" and "reasonable." Clerk's Papers (CP) at 33. The court also found the claims against the officer to be unsubstantiated.
¶ 66 The trial court granted the Guild's motion for injunctive relief, applying the standard articulated in City of Tacoma v. Tacoma News, Inc., 65 Wash.App. 140, 827 P.2d 1094 (1992) (holding that police investigative records containing unsubstantiated claims of child abuse are exempt from disclosure under the PRA).[3] The order was appealed and we granted direct review. Order Granting Review at 1.

ANALYSIS
¶ 67 The PCIR and the MIIIR are public records and the cities of Mercer Island and Puyallup are public agencies. RCW 42.56.010. Unless an exemption or prohibition applies, the PCIR and the MIIIR must be made available for public inspection and copying. RCW 42.56.070.
¶ 68 RCW 42.56.240(1) provides an exemption from disclosure for certain investigative records. Under RCW 42.56.240(1), investigative records compiled by law enforcement (and state agencies vested with the responsibility to discipline members of its profession) are exempt from disclosure if nondisclosure is either (1) essential to effective law enforcement or (2) essential for the protection of any person's right to privacy.
¶ 69 The PCIR and the MIIIR fit squarely within this exemption. Nondisclosure of the PCIR and the MIIIR is essential for the *207 protection of the officer's right to privacy because disclosure of false and unsubstantiated charges would invade and violate the officer's privacy.[4] In this case, redacted disclosure of the PCIR and the MIIIR is insufficient to protect the officer's right to privacy, as several articles connecting the officer with the incident have already been published.

A. The Right to Privacy under the PRA

¶ 70 RCW 42.56.050 supplies the standard for determining whether a person's privacy is invaded or violated under the PRA. That provision states:
A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public. The provisions of this chapter dealing with the right to privacy in certain public records do not create any right of privacy beyond those rights that are specified in this chapter as express exemptions from the public's right to inspect, examine, or copy public records.
(Emphasis added.) Both the lead opinion and the concurrence/dissent misapply this definition. I begin by addressing the concurrence/dissent.
¶ 71 The legislature has stated that "privacy" as used in RCW 42.56.050 "is intended to have the same meaning as the definition given that word by the Supreme Court in `Hearst v. Hoppe,' 90 Wash.2d 123, 135 [580 P.2d 246] (1978)." LAWS OF 1987 ch. 403, § 1. At that precise location, one finds the relevant discussion:
"Right to privacy" is not defined by [the PRA].... Inasmuch as the statute contains no definition of the term, there is a presumption that the legislature intended the right of privacy to mean what it meant at common law. The most applicable privacy right would appear to be that expressed in tort law. Tort liability for invasions of privacy by public disclosure ... is set forth in Restatement (Second) of Torts § 652D, at 383 (1977): "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person...."
Hearst Corp. v. Hoppe, 90 Wash.2d 123, 135, 580 P.2d 246 (1978) (citation omitted).
¶ 72 In Bellevue John Does, 164 Wash.2d at 215, 189 P.3d 139, a case involving a school teacher, we held that a false or unsubstantiated accusation of sexual misconduct "is not an action taken by an employee in the course of performing public duties." Instead, we held that a false or unsubstantiated accusation of sexual misconduct "is a `matter concerning the private life' within the Hearst definition of the scope of the right to privacy." Id. (quoting Hearst, 90 Wash.2d at 135, 580 P.2d 246); see also Cowles, 109 Wash.2d 712, 748 P.2d 597. Accordingly, we held that disclosure of false or unsubstantiated allegations of sexual misconduct violates a teacher's right to privacy under the PRAsuch disclosure would be highly offensive to a reasonable person. Bellevue John Does, 164 Wash.2d at 216, 189 P.3d 139 (citing Dawson v. Daly, 120 Wash.2d 782, 796, 845 P.2d 995 (1993); Tacoma News, 65 Wash.App. at 145, 827 P.2d 1094). We also held that the public does not have a legitimate interest in the identities of teachers who are subjects of false or unsubstantiated allegations of sexual misconduct. Id. at 216-21, 189 P.3d 139.
¶ 73 We should apply the same standard to law enforcement officers. The allegations against the officer in this case are false and unsubstantiated and, therefore, are matters *208 concerning the private life of the officer under Bellevue John Does. Disclosure of the officer's identity in connection with false and unsubstantiated accusations would be highly offensive to a reasonable person and are not of legitimate public concern. Id.
¶ 74 This should end our analysis: the PRA's investigative records exemption applies in this case because disclosure of the officer's identity would invade or violate the officer's right to privacy. In this case, where information connecting the officer to unsubstantiated allegations has already been made public, any further disclosure of the details of accusations in the PCIR and MIIIR will perpetuate this identification and violate the officer's right to privacy. Nondisclosure of the PCIR and the MIIIR is essential to protect the officer's right to privacy from further invasion. RCW 42.56.240(1).

B. The Lead Opinion Misapplies RCW 42.56.050

¶ 75 The lead opinion does not reach this result because it misapplies the "legitimate public concern" prong of RCW 42.56.050. As the lead opinion puts it, "[a]lthough lacking a legitimate interest in the name of a police officer who is the subject of an unsubstantiated allegation of sexual misconduct, the public does have a legitimate interest in how a police department responds to and investigates such an allegation against an officer." Lead opinion at 17. It then remands to the trial court for production of the PCIR and the MIIIR after redaction of the officer's identity. Id. at 23.
¶ 76 The lead opinion recognizes that we have previously permitted redacted disclosure in one case "even though redaction of only the person's name was insufficient to protect their identity." Id. at 17 (citing Koenig v. City of Des Moines, 158 Wash.2d 173, 142 P.3d 162 (2006)). Koenig, however, does not support the lead opinion's compromise. The claims of sexual misconduct were not unsubstantiated or proven false in Koenig. Koenig, 158 Wash.2d at 177-78, 142 P.3d 162. In other words, the public had some legitimate interest in disclosure of "information about the person" in Koenig. See id. at 186-87, 142 P.3d 162. Here, as in Bellevue John Does, the public does not have a legitimate interest in the identity of an officer who was the subject of false and unsubstantiated allegations of sexual misconduct.

C. Attorney Fees

¶ 77 Finally, neither the lead opinion nor the concurrence/dissent addresses whether the appellants are entitled to statutory penalties and reasonable attorney fees under RCW 42.56.550. The appellants are not entitled to statutory penalties or attorney fees. They have not prevailed against an agency in this case but rather opposed the motion of the Guild and the officer to enjoin disclosure. The Puyallup Police Department and the Mercer Island Police Department have not wrongfully denied disclosure. Therefore, RCW 42.56.550(4) does not apply.

CONCLUSION
¶ 78 The PCIR and the MIIIR here fit squarely within the PRA's investigative records exemption. Disclosure of the officer's identity in connection with false and unsubstantiated accusations would be highly offensive to a reasonable person and is not of legitimate public concern. In this case, where some investigative records have already been disclosed and information connecting the individual officer to unsubstantiated allegations has already been made public, further disclosure of the investigative records in any form will repeat the identification of the officer and violate the officer's right to privacy.[5] Nondisclosure of the PCIR and the MIIIR is therefore essential for the protection of the officer's right to privacy. RCW 42.56.240(1). I dissent.
NOTES
[1] The MIIIR is not contained in the appellate record before this court.
[2] Appellants cite the substantive requirements for an injunction under RCW 7.40.020 as authority to deny the injunction claim. RCW 7.40.020 codifies the court's general powers to grant an injunction. RCW 42.56.540 specifically governs the court's power to enjoin the production of a record under the PRA. We have long recognized that where two statutes apply, the specific statute supersedes the more general statute. Gen. Tel. Co. of the Nw., Inc. v. Utils. & Transp. Comm'n, 104 Wash.2d 460, 464, 706 P.2d 625 (1985). Because RCW 42.56.540 is specific to injunctions against production under the PRA, it is the governing injunction statute in this case.
[3] The PRA defines a "`[p]ublic record'" as "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." RCW 42.56.010(2).
[4] Former RCW 42.56.230 provides in pertinent part: "The following personal information is exempt from public inspection and copying under this chapter: ... (2) Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy."
[5] RCW 42.56.240 provides:

The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under this chapter:
(1) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.
[6] The BIPG and Officer Cain, and the American Civil Liberties Union of Washington (ACLU) in its amicus brief, incorrectly cite to City of Seattle v. Klein, 161 Wash.2d 554, 166 P.3d 1149 (2007) for the applicable waiver rule. Klein, applied the waiver rule for relinquishment of a constitutional right. Id. at 560 n. 4, 166 P.3d 1149. The right to privacy here stems from the PRA, and has been interpreted according to the common law as enumerated in the Restatement (Second) of Torts § 652D (1977). Hearst, 90 Wash.2d at 135, 580 P.2d 246.
[7] Two Court of Appeals cases appellants cite for their waiver argument are not helpful. In Columbian Publishing Co. v. City of Vancouver, 36 Wash.App. 25, 27, 30, 671 P.2d 280 (1983), the court held that police officers' affirmative act of disclosure by choosing to "go to the press" with their complaints waived their right to privacy in complaints they filed against the police chief. By failing to object to the Puyallup production, Officer Cain engaged in no affirmative act of waiver. Instead Officer Cain pursued a separate lawsuit to prevent Bainbridge Island's production of the same documents.

In Ames v. City of Fircrest, 71 Wash.App. 284, 296, 857 P.2d 1083 (1993), the court held that keeping a police chief's identity anonymous was not "essential to effective law enforcement" because the chief had been placed on administrative leave and had agreed to a press release accepting responsibility for his mismanagement. Not only had the chief agreed to the press release, the court did not even consider waiver of the right to privacy.
[8] In Bellevue John Does, we defined "personal information" in former RCW 42.56.310(1)(b) (2002). 164 Wash.2d at 211, 189 P.3d 139. That provision was amended and recodified as former RCW 42.56.230(2) and provides identical language for the personal information exemption. Former RCW 42.17.310(1)(b) (2002). For consistency, we refer to former RCW 42.56.230(2).
[9] "A person's `right to privacy,' `right of privacy,' `privacy,' or `personal privacy,' as these terms are used in this chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.56.050.
[10] The concurrence/dissent argues that unsubstantiated allegations of sexual misconduct against a police officer "in no way involve the details of one's personal and private life." Concurrence/dissent at 202. The dissent would hold that a person's right to privacy does not include their identity in connection with an unsubstantiated allegation of sexual misconduct during performance of public duties. Id. at 205. While accusing us of ignoring the definition of "private facts" in comment b to § 652D of the Restatement (Second) of Torts, concurrence/dissent at 204, the concurrence/dissent ignores the precedent of this court that expressly defined the scope of the right to privacy in the context of unsubstantiated allegations of sexual misconduct. Bellevue John Does, 164 Wash.2d at 215, 189 P.3d 139. We reiterate:

An unsubstantiated or false accusation of sexual misconduct is not an action taken by an employee in the course of performing public duties.... The fact of the allegation, not the underlying conduct, does not bear on the [officer's] performance or activities as a public servant. The mere fact of the allegation of sexual misconduct ... may hold the [officer] up to hatred and ridicule in the community, without any evidence that such misconduct ever occurred. The fact that [an officer] is accused of sexual misconduct is a "matter concerning the private life" within the Hearst definition of the scope of the right to privacy. Hearst, 90 Wash.2d at 135, 580 P.2d 246. Thus, we hold the [officer has] a right to privacy in [his] identit[y] because the unsubstantiated... allegations are matters concerning the [officer's] private [life] and are not specific incidents of misconduct during the course of employment.
Id. at 215-16, 189 P.3d 139 (footnote omitted). No party in this case argued that Bellevue John Does should be overruled, nor would we support such an argument.
[11] Although recognizing the possibility of a legitimate public interest, in Bellevue John Does, we did not need to determine whether such a legitimate interest in fact existed, because the general nature of the public records request in that case allowed the court to protect the teachers' identities by producing the records with only the teachers' names redacted. Id. at 227, 189 P.3d 139.
[12] The dissent argues that we should exempt the entire PCIR and MIIIR from disclosure because the documents identify Officer Cain in connection with an unsubstantiated allegation of sexual misconduct. Dissent at 207-08. The dissent's position depends on an incredibly narrow reading of what information is included in these reports. The PCIR and the MIIIR contain a great deal of information beyond Officer Cain's identity. Importantly, they reveal the nature of the police departments' investigations into the allegation of misconduct. Even assuming that disclosure of any portion of these reports would reveal Officer Cain's identity, we still must inquire into whether any portion of that information is a matter of legitimate public concern. RCW 42.56.050. If disclosure of the entire report reveals information about a person, then the entire report must be "highly offensive" and "not [a matter] of legitimate concern" in order for any disclosure to violate a person's right to privacy. Id. That is not the case here. We cannot follow the dissent's reasoning without ignoring the public's legitimate interest in the nature of the investigations, the details of which are included in the PCIR and the MIIIR in addition to the identity of Officer Cain.
[13] The multifactor test advocated in the amicus brief of the ACLU is unnecessary to decide this case, and we express no opinion about it.
[14] Appellants have not argued for an award of costs, attorney fees, or penalties under former RCW 42.56.550(4). Even if such a request were made, appellants would not be entitled to an award of attorney fees, costs, or penalties because former RCW 42.56.550(4) does not authorize such an award in an action brought by a private party to prevent disclosure of public records held by an agency where the agency has agreed to release the records but is prevented from doing so by court order. Confederated Tribes of Chehalis Reservation v. Johnson, 135 Wash.2d 734, 757, 958 P.2d 260 (1998). Appellants have prevailed against Officer Cain and the BIPG, not the cities of Puyallup and Mercer Island, and are thus not entitled to an award under Former RCW 42.56.550(4).
[1] A 2011 amendment recodified this subsection as RCW 42.56.230(3). LAWS OF 2011, ch. 173, § 1.
[2] Formerly codified as RCW 42.17.255. RCW 42.56.050 is used in this opinion in place of the former codification.
[3] The fact that the allegation concerns sexual misconduct surely does not mean that personal privacy is at stake. If that were so then sexual offenses would involve the offenders' personal privacy interests.
[1] Ch. 42.56 RCW.
[2] This statement is found in the record at Clerk's Papers (CP) at 66.
[3] The trial court issued its ruling before this court decided Bellevue John Does 1-11, 164 Wash.2d 199, 189 P.3d 139; CP at 35-37. The holding of Bellevue John Does is not inconsistent with Tacoma News. See Bellevue John Does, 164 Wash.2d at 210, 216-21, 189 P.3d 139.
[4] The Guild does not argue that nondisclosure of the PCIR and the MIIIR is essential to effective law enforcement. In Cowles Publ'g Co. v. State Patrol, 109 Wash.2d 712, 713, 733, 748 P.2d 597 (1988), however, we held that nondisclosure of the identities of law enforcement officers was essential to effective law enforcement where complaints had been made against the officers and internal investigations had been conducted by their respective law enforcement agencies. We reasoned that "[i]nternal investigations depend upon the trust and cooperation of the law enforcement officers within the agency" and stated that "the cooperation of the officers is available because they know the incident will be kept confidential." Id. at 733, 748 P.2d 597.
[5] In this age of rapid information dissemination via the internet, I predict that the individual officer's right to privacy will be further invaded and violated soon after these records are released.