# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

ARTHUR WEST,

Appellant,

v.

DEPARTMENT OF LICENSING,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 71643-3-I

ORDER GRANTING
MOTION TO PUBLISH

Respondent, State of Washington Department of Licensing, has moved for publication of the opinion filed in this case on June 9, 2014. The panel hearing the case has considered the motion and Appellant's answer and has determined that the motion should be granted. The court hereby

ORDERS that the motion to publish the opinion is granted.

Dated this 1st day of August, 2014.

For the Panel:

Cox, J.

Judge



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ARTHUR WEST,

        Appellant,

        v.

DEPARTMENT OF LICENSING,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 71643-3-I

DIVISION ONE

PUBLISHED

FILED: <u>June 9, 2014</u>

Cox, J. — Arthur West appeals the summary dismissal of his suit brought under the Public Records Act against the Department of Licensing. He contends that the Department violated the Public Records Act by failing to reasonably search for, identify, and produce records related to motor vehicle fuel tax payments to Indian Tribes. West also appeals the order denying his motion for reconsideration of the summary judgment order. The Department properly redacted and withheld information pursuant to a statutory exemption. Its search for records was adequate and timely. The court properly exercised its discretion in denying West's motion for reconsideration. Accordingly, we affirm.

On January 12, 2012, West submitted a Public Records Act request to the Department of Licensing. He sought: (1) "All records showing the total amounts of gas tax money given monthly to each Indian Tribe, 2008 to present"; (2) "All audit reports concerning the expenditure of such funds"; and (3) "All communications concerning the disclosure or witholding [sic] of such records, or

the propriety of disclosing or withholding such records, [J]anuary of 2011 [t]o present." The Department of Licensing timely acknowledged receipt of West's request and sought clarification. After West clarified his request, the Department informed him that the estimated date of response was March 9, 2012.

West e-mailed the Department on February 11, 2012 stating that the estimated time period was "unreasonable." Additionally, he made a second request for disclosure, seeking "any indexes of public records maintained by the department that encompass the gas tax refund amounts, and any applicable retention and destruction schedules." The Department acknowledged receipt of his second request on February 17, 2012. It informed West that it expected a response could be made on or before February 24, 2012.

On February 24, the Department contacted West to provide a status update on his second public records request. It informed West that it expected to respond on or before March 2, 2012. Three days later, West responded and informed the Department that he considered it to be in violation of the Public Records Act by failing to reasonably disclose the records.

The Department made its first disclosure for West's first request on March 7, 2012. It stated that responsive records to items #1 and #2 were exempt from disclosure, and it attached an exemption/redaction log. It also told West that it was reviewing other records to determine whether they were exempt. Additionally, the Department stated that it continued to "search for and review records responsive to item #3" and that it expected to provide such records to

2

West "no later than March 23, 2012 and in installments as they become available."

The next day, West sued the Department alleging that it violated the Public Records Act by "failing to reasonably search for, identify, and produce records."

The Department continued to respond to West's requests throughout the spring and summer. The details of the Department's response are described later in this opinion.

In November 2012, the Department moved for summary judgment. It argued that West's suit was unnecessary, that its search for records was reasonable, that it timely responded to West's requests, that it properly identified each exempt record, and that it properly redacted or withheld records pursuant to a statutory exemption.

West cross-moved for summary judgment and requested a continuance pursuant to CR 56(f). In his motion, he argued that he was forced to file suit and conduct discovery in order to compel the disclosure of records and that the Department's exemptions were improper.

The Department moved for *in camera* review of the withheld and redacted documents.

The trial court denied West's motion for a continuance, denied the Department's motion for *in camera* review, and granted the Department's motion for summary judgment.

West moved for reconsideration, and the trial court denied his motion.

3

West appeals.

## SUMMARY JUDGMENT TO THE DEPARTMENT

West claims that the trial court erred when it (1) concluded that the Department properly redacted or withheld records pursuant to a statutory exemption, (2) concluded that the Department responded to his requests in a timely manner, and (3) concluded that West's lawsuit was unnecessary to compel production. His arguments are addressed in turn.

Judicial review under the Public Records Act is de novo.[1] Public Records Act cases may be decided on summary judgment.[2] "Under summary judgment analysis, the appellate court engages in the same inquiry as the trial court: '[I]t views the pleadings and affidavits in the file, and all reasonable inferences therefrom, in the light most favorable to the nonmoving party, and it grants judgment when no material issue of fact exists and the moving party is entitled to judgment as a matter of law.'"[3]

### Statutory Exemptions

West argues that the Department improperly withheld and redacted records pursuant to a statutory exemption. Specifically, he contends that these

---

[1] RCW 42.56.550(3).

[2] Spokane Research & Def. Fund v. City of Spokane, 155 Wn.2d 89, 106, 117 P.3d 1117 (2005).

[3] Limstrom v. Ladenburg, 98 Wn. App. 612, 614, 989 P.2d 1257 (1999) (alteration in original) (quoting Mueller v. Miller, 82 Wn. App. 236, 246-47, 917 P.2d 604 (1996)).

statutes do not exempt disclosure of amounts of money refunded by the state to the tribes. We disagree.

The Public Records Act requires each agency to make available all public records unless the record falls within a Public Records Act exemption or other statutory exemption.[4] "To the extent necessary to prevent an unreasonable invasion of personal privacy interests protected by the [Public Records Act], the agency shall redact identifying details and produce the remainder of the record."[5] "The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records."[6]

The Public Records Act is a "'strongly worded mandate for broad disclosure of public records.'"[7] The Act is to be "'liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected.'"[8]

When interpreting a statute, we conduct a de novo review.[9] We interpret a statute so as to ascertain and give effect to the legislative intent.[10] "If the

---

[4] Bainbridge Island Police Guild v. City of Puyallup, 172 Wn.2d 398, 407, 259 P.3d 190 (2011); RCW 42.56.070(1).

[5] Bainbridge, 172 Wn.2d at 407.

[6] RCW 42.56.550(1).

[7] Bainbridge, 172 Wn.2d at 408 (quoting Hearst Corp. v. Hoppe, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)).

[8] Id. (quoting Hearst, 90 Wn.2d at 127).

[9] Limstrom, 98 Wn. App. at 615.

statute's meaning is plain, [the court] give[s] effect to that plain meaning as the expression of the legislature's intent."[11] "'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'"[12]

Under RCW 82.36.450, the State may enter into an agreement with any federally recognized Indian tribe regarding the taxation of motor vehicle fuel on reservation property.[13] One provision of this statute provides:

> **(4) *Information from the tribe*** or tribal retailers received by the state or open to state review under the terms of an agreement ***shall be deemed to be personal information under [RCW 42.56.230(4)(b)] and exempt from public inspection and copying.***[14]

RCW 42.56.230(4)(b) provides:

> The following personal information is exempt from public inspection and copying under this chapter:
>
> . . .
>
> (4) Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would: . . . (b) violate the taxpayer's right to privacy or result in unfair competitive disadvantage to the taxpayer.

---

[10] Id.

[11] Bostain v. Food Express, Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007).

[12] State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (internal quotation marks omitted) (quoting Davis v. Dep't of Licensing, 137 Wn.2d 957, 963, 977 P.2d 554 (1999)).

[13] RCW 82.36.450.

[14] (Emphasis added.)

Here, the Department properly withheld and redacted information related to the amounts of gas tax money refunded to a tribe pursuant to these statutory exemptions. The plain language of RCW 82.36.450(4) shows the legislature's intent to protect "information from the tribe," which it expressly deems "personal information." The plain language of RCW 42.56.230(4)(b) shows the legislature's intent to protect "[i]information required of [the tribe]," if that information would violate the tribe's right to privacy. Under these statutes, this personal information is plainly exempt from public inspection and copying.

West focuses on the words "*from the tribe*" in RCW 82.36.450 or "required of any taxpayer" in RCW 42.56.230(4)(b) to argue that the dollar amounts of gas tax money *given* or *refunded* to the tribes is fundamentally different information from information *received* from or required of the tribe, such as numbers of gallons of gasoline, that is used to calculate the refund. He argues that only the latter is exempt under the statutes. This argument is not persuasive.

West's reading of the statutes is too restrictive.

The amount of gas tax money given or refunded to the tribe contains "information required of [the tribe]." Likewise, it contains "information from the tribe." Whether the State discloses this private information to West in its original form, *i.e.*, the number of gallons of gasoline, or rather, whether it provides the information in the form of a mathematical calculation, *i.e.*, the number of gallons of gasoline is equal to the refund amount divided by the tax rate, the private information is the same. It would simply be disclosed in a different form.

7

Disclosure of such personal information would be contrary to the plain words of the statute. West's arguments that this information is qualitatively different are not convincing.

West contends that Bainbridge Island Police Guild v. City of Puyallup is "on point."[15] We disagree.

He relies on that case for the assertion that "[e]ven though a public record requestor could work backwards and figure out some information provided by the tribes, that does not make the amount the State paid out exempt."[16] In Bainbridge, a police officer accused of sexual misconduct sought an injunction to prevent the disclosure of investigation reports.[17] The supreme court considered whether the reports must be disclosed under the Public Records Act, or whether they fell under the personal information exemption or the investigative records exemption.[18] The lead opinion concluded that while the officer's identity was exempt from production, the remainder of the reports were not exempt, because the nature of the investigations is a matter of legitimate public concern.[19]

Bainbridge is distinguishable from this case. In order for either exemption to apply in Bainbridge, it was necessary to determine that disclosure of the

---

[15] Appellant Arthur West's Opening Brief at 22 (citing Bainbridge, 172 Wn.2d at 417-18).

[16] Id. at 23.

[17] Bainbridge, 172 Wn.2d at 405.

[18] Id. at 408-09.

[19] Id. at 417-18.

information would violate the individual's right to privacy.[20] A person's right to privacy is violated only if disclosure of information about the person: (1) would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public.[21] Because only the officer's name was not of legitimate public concern, the remainder of the reports did not qualify under the exemption.

Here, in contrast, RCW 82.36.450 does not turn on whether the individual's right to privacy would be violated by disclosure.[22] Accordingly, it is not necessary for this court to conduct this balancing inquiry and consider whether the matter is one of legitimate public concern. So long as the information is "information from the tribe," it is statutorily defined as personal information and is exempt.

West relies on the following language from Bainbridge to support his argument: "We recognize that appellants' request under these circumstances may result in others figuring out [the officer's] identity. However, it is unlikely that these are the only circumstances in which the previously existing knowledge of a third party, paired with the information in a public records request, reveals more than either source would reveal alone."[23]

---

[20] Id. at 408-09, 419.

[21] Id. at 415.

[22] See RCW 82.36.450(4).

[23] Bainbridge, 172 Wn.2d at 418.

He appears to rely on this information to support the argument that *nonexempt* information does not *become* exempt simply because its disclosure may result in figuring out other exempt information. But that is not the circumstance in this case. Here, we do not reach our conclusion that the refund amounts given by the state are exempt because disclosure may result in figuring out *other* exempt information provided by the tribes. Rather, as previously discussed, the refund amounts here contains the *same* "information required of [the tribe]."[24] Likewise, it contains the same "information from the tribe."[25] This private information is merely expressed in a different manner. It is exempt.

Further, Bainbridge is distinguishable because the "previously existing knowledge of a third party" in that case was obtained from newspaper reports outside the public records request.[26] Here, in contrast, the public records request *alone* reveals personal information from the tribe if it is not redacted or withheld. And, as West acknowledges, an agency should look to the contents of the document, when deciding if a record should be exempt because of a privacy right. The contents of the documents in this case further support our conclusion that the legislature intended to protect the refund amounts as personal information. For these reasons, West's reliance on this case is not helpful.

Finally, West argues that this court should consider RCW 42.56.270(15), which exempts financial information provided to the department of licensing "as

---

[24] RCW 42.56.230(4)(b).

[25] RCW 82.36.450(4).

[26] Bainbridge, 172 Wn.2d at 418.

10

required by RCW 19.112.110 or 19.112.120, except information disclosed in aggregate form that does not permit the identification of information related to individual fuel licensees." But West fails to adequately explain the relationship between these statutes. RCW 42.56.270(15) does not expressly refer to the statute at issue in this case, RCW 82.36.450. The only link between the two is that RCW 19.112.120 refers to chapter 82.36 as a whole. West's citation to these statutes does nothing to override the clear statutory exemption of the information we previously discussed. We conclude that the legislative intent is clear from the words of RCW 82.36.450(4), which plainly support the claimed exemption.

### Timeliness of Response

West next argues that the trial court erred when it concluded that the Department responded to his record requests in a timely manner. We disagree.

"The [Public Records Act] mandates full disclosure of public records in a timely manner."[27] RCW 42.56.520 provides that upon receiving a request for public records, the Department must respond within five business days by either "(1) providing the record; (2) providing an internet address and link on the agency's web site . . .; (3) acknowledging that the agency . . . received the request and providing a reasonable estimate of the time the agency . . . will require to respond to the request; or (4) denying the public record request." "Additional time required to respond to a request may be based upon the need to

---

[27] Kitsap County Prosecuting Attorney's Guild v. Kitsap County, 156 Wn. App. 110, 120, 231 P.3d 219 (2010).

11

clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request."[28]

Here, the Department timely responded to both of West's requests.

The Department received West's first request on January 23, 2012 and responded on January 30, 2012, within five business days, by acknowledging his request and asking for clarification. After getting clarification, the Department e-mailed West a week later, on February 10, with an update. The Department estimated that it would respond to his first request on March 9. West did not challenge the reasonableness of this estimate.

West's first request was "complex." A declaration from Hannah Fultz, an employee in the Public Records Office for the Department of Licensing, shows that throughout the spring of 2012, the Department searched for responsive records. Fultz, along with Sara Crosby, a Public Disclosure Manager, reviewed records to determine whether they were responsive and whether they should be produced, disclosed, redacted, or withheld. The records responsive to West's first request were substantial. For example, Crosby stated that on June 15, the Prorate and Fuel Tax Program provided paper copies of approximately 50,000 pages of records in response to West's first request. As Fultz stated, "It was

---

[28] RCW 42.56.520.

12

difficult to grasp the scope of the responsive records because of how broad the request was."[29]

Given this broad request, the Department also timely disclosed records to West. The Department provided its first disclosure for this request on March 7, which was within its estimated time frame. This e-mail stated:

> Records responsive to items #1 and #2 [in West's first request] are exempt from disclosure. Please see the attached Exemption/Redaction Log for details. Please note that pages #000001 to #000020 aren't listed on the log. The Department is currently working with our attorneys to determine whether or not these pages are exempt, either in whole or in part. Pending their review, and adding in a short time to appropriately document this outcome for you, I expect to report the outcome to you by March 16, 2012.[30]

The Department also stated that it continued to search for and review records responsive to item #3 of this request and that it expected to provide records by March 23, 2012.

Although not always within its estimated deadlines, the Department continued to contact West and provide periodic updates and installments of documents. The Department provided records responsive to part 3 of the request on June 28. It provided pages #000001-000020 to West on July 26. Crosby's declaration reveals that the Department sent installments in response to this request on the following dates in 2012: July 6, 10, 23, 26, and 27; August 6, 17, 20, 21, 23, 24, and 31; September 18; and October 4, 11, 18, 19, 23, 24, and

---

[29] Clerk's Papers at 84.

[30] Id. at 129.

29. As of October 31, 2012, the Department had sent a total of 47,363 pages to West, and there remained 7,000 to 10,000 pages to be reviewed.

Overall, the Department's response to this request was timely. The request was complex and broad, and the record shows that the Department continued to search for records, review the records, contact West, and provide installments throughout the spring and summer. Additional time was necessary to locate and assemble the information requested, to notify third persons or agencies affected by the request, and to determine whether any of the information requested was exempt. The Department's actions are within the scope of what is permitted under RCW 42.56.520. As Fultz stated in her declaration, "The scope, type and volume of records requested in Request #1 were not routine. Responding to West's requested [sic] could not be accomplished at any faster rate than what the Department has accomplished and certainly not by March 8, 2012, when West filed the present lawsuit."[31]

The Department also timely responded to West's second request. It received this request on February 13, 2012 and acknowledged it on February 17, 2012. It provided an estimated response date of one week. One week later, on February 24, the Department contacted West to provide another update and to inform him that the new expected response date was March 2. On March 9, the Department again contacted West to inform him that there were no responsive records to his search. It explained the results of the search and asked West to

---

[31] Id. at 85-86.

call the Department if it had misunderstood his request. West did not further clarify this request, and the request was closed.

In sum, the trial court properly concluded that the Department responded to West's record requests in a timely manner.

West concedes that the Department's search was adequate, but he argues that the Department embarked upon an "unnecessary review" of nonresponsive records, acted in bad faith, silently and deliberately withheld records until after the show cause hearing, "acted to obstruct and complicate the disclosure process." Nothing in this record supports these accusations.

Further, as just discussed, West's request was complex and broad. And as the Department points out, West drafted the broad language, he did not indicate that the records were not responsive, and he did not further clarify his request. Moreover, West concedes that half of these records *were* responsive to his request. Accordingly, West's "bad faith" arguments are wholly unpersuasive.

West also argues generally that the Department "could have easily disclosed" certain records sooner because it had these records "at its fingertips." He relies on RCW 42.56.100 for the proposition that the Department is required to provide the timeliest possible assistance to requestors. But West fails to provide authority that the Department had any obligation to provide these records first, or that it had an obligation to provide the installments in any particular order. As discussed previously, the Department provided timely assistance to West. As Fultz's declaration reveals, the Department continuously worked to process and respond to his request, and given the complexity, scope, type, and volume of the

records, the disclosure likely could not have been accomplished at any faster rate. West's assertions to the contrary are not persuasive.

West also argues that the Department's response was untimely because the Department "ignored its own deadlines," and failed to "provide justification" for its "unilateral extension of time." He relies on Violante v. King County Fire District No. 20 to argue that "[a]bsent such justification, this Court should bind the Department to its original time estimate."[32] But Violante did not expressly consider whether failure to abide by original time estimates constituted a violation under the Act.[33] West cites no other authority to support this claim. Rather, he relies on Model Rules for the Public Records Act to argue that the Departments "serial extensions" had the effect of denying West access to public records.[34] But the Model Rules "are advisory only and do not bind any agency."[35] Accordingly, West's argument is not persuasive.

*Necessity of Lawsuit*

Finally, West argues that the trial court erred when it concluded that his lawsuit was unnecessary to compel the Department to produce the records he had requested. Because we conclude that the Department complied with the

---

[32] Appellant Arthur West's Opening Brief at 30 (citing Violante v. King County Fire Dist. No. 20, 114 Wn. App. 565, 570-71, 59 P.3d 109 (2002)).

[33] Violante, 114 Wn. App. at 565.

[34] Appellant Arthur West's Reply Brief at 15-16 (citing WAC 44-14-04003(6)).

[35] WAC 44-14-00003.

16

relevant provisions of the Public Records Act, we need not address this argument.

## MOTION FOR RECONSIDERATION

West argues that the trial court improperly denied his motion for reconsideration. We disagree.

As an initial matter, West argues that the proper standard of review is de novo because the trial court was engaged in deciding questions of law, not fact. West is incorrect. This court reviews the denial of a motion for reconsideration for abuse of discretion.[36]

A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons.[37] A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; and it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.[38] Additionally, we may affirm on any basis supported by the record.[39]

West moved for reconsideration pursuant to CR 59(a)(4) and CR 59(a)(7). CR 59(a)(4) allows the court to grant reconsideration based on "[n]ewly

---

[36] Lilly v. Lynch, 88 Wn. App. 306, 320-21, 945 P.2d 727 (1997).

[37] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[38] Id. at 47.

[39] LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial." CR 59(a)(7) allows the court to grant reconsideration if the decision is "contrary to law."

West argues that he "put before the Trial Court a great mass of late-produced responsive records, which could have and should have been produced to [him] long ago" and that these were "material records that would have and should have changed the result of the show cause hearing." But he fails to identify these specific records on appeal, argue how these were material to the issues before the trial court, or explain how they would have changed the result at the hearing. Rather, he generally asserts that if the trial court had considered these records, it would have concluded that the Department could have produced them earlier. Again, West fails to support these speculative arguments. Further, given the scope, complexity, and the Department's response, West fails to show that this evidence would have changed the result of the show cause hearing.

In sum, West fails to show that the newly discovered evidence was material to any of the issues before the court, or that the court's decision was contrary to law. The trial court did not abuse its discretion.

West argues that the trial court applied the wrong legal standard and thus, based its decision on untenable grounds. It is true that the trial court identified an

outdated version of Local Civil Rule 59.[40] But even if the trial court erred by looking to an outdated rule, we may affirm on any basis supported by the record.[41] For the reasons just discussed, we conclude that the record shows that trial court did not abuse its discretion.

## ATTORNEY FEES

West argues that he is entitled to fees pursuant to RCW 42.56.550(4). RCW 42.56.550 provides that any person who prevails against an agency shall be awarded all costs. A Public Records Act claimant "prevails" against an agency "only when that agency [wrongfully] withheld documents."[42] Because the Department did not wrongfully withhold the documents, West has not prevailed. Accordingly, we deny his request for fees on appeal.

We affirm the orders and deny West's request for fees on appeal.

_Cox, J._

WE CONCUR:

_____     _____

---

[40] See Clerk's Papers at 1836 ("Local Civil Rule 59 specifies as follows: 'Motions for Reconsideration are disfavored. The court will ordinarily deny such motions in the absence of showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.'").

[41] LaMon, 112 Wn.2d at 200-01.

[42] Germeau v. Mason County, 166 Wn. App. 789, 811, 271 P.3d 932, review denied, 174 Wn.2d 1010 (2012).

19