IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ISABELLE BICHINDARITZ, an individual, | ) ) ) | No. 70992-5-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| UNIVERSITY OF WASHINGTON, | ) ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| and | ) ) | FILED: February 17, 2015 |
| ORLANDO BAIOCCHI, an individual, | ) ) | |
| Defendant. | ) ) ) | |

BECKER, J. — This is an appeal from a judgment in a Public Records Act case imposing a large penalty and award of attorney fees against the University of Washington. We reverse.

The dispute arose from the University's decision to deny tenure to Isabelle Bichindaritz, Ph.D., a former professor at the University's Tacoma Institute of Technology.

On September 9, 2009, Bichindaritz e-mailed a request to the University's Office of Public Records seeking "a complete copy of all of my personnel files and public records at the University of Washington, at the University of

Washington Tacoma, and at the Institute of Technology." The request also sought copies of "every email related to me (Isabelle, Isabelle Bichindaritz) among all the people involved below" and went on to list approximately 96 different university employees.

The University received Bichindaritz's request on September 10, 2009, and responded by letter 5 business days later. The letter estimated that it would take approximately 25 business days to assemble and process the responsive documents relating to Bichindaritz's request; that records would be made available "on a rolling production basis to avoid unnecessary delay"; and that Bichindaritz would be notified if the University needed additional time to locate, review, or assemble documents. The director of the University's Office of Public Records immediately began to locate and assemble responsive documents by contacting University faculty. If she did not receive a response from a faculty member, she followed up on her original request by e-mail.

By the end of October 2009, all responsive documents—totaling approximately 25,000 pages—had been assembled. The University then began to review the records and to redact information that was exempt from disclosure under state and federal law. This proved to be a time-consuming process, and the University notified Bichindaritz several times that the estimated production date would have to be pushed back. In six stages during the 14 months between October 13, 2009, and December 9, 2010, the University provided Bichindaritz with some 13,000 pages of documents that had been reviewed and in some cases redacted.

2

Meanwhile, on March 11, 2010, Bichindaritz filed an administrative complaint alleging sex discrimination, retaliation, and national origin discrimination by the University.

On June 15, 2010, the University terminated Bichindaritz.

As of July 30, 2010, there were still 12,000 pages awaiting review—about half of the documents assembled in response to her request. Finding of Fact 1.19.

On August 25, 2010, Bichindaritz filed a gender discrimination lawsuit against the University in federal court.

On December 9, 2010, the University produced stage 6 with a letter indicating that the production was still "partial."

On January 31, 2011, the University informed Bichindaritz that her request would be closed if she did not view or pick up the stage 6 documents by February 7, 2011.

On February 7, 2011, Bichindaritz directed the University to close her request. According to Bichindaritz, counsel advised her that the documents would be obtained through discovery in the federal lawsuit. The University closed the request and stopped processing the remaining documents.

According to Bichindaritz, the discovery process in federal court was unsatisfactory. On June 6, 2011, a day after the federal court discovery deadline passed, she asked the University to resume processing the remaining documents related to her September 2009 public records request. The University estimated that the remaining documents would be available by July

20, 2011. After several e-mails notifying her that additional time would be necessary, the University disclosed the *final* 12,000 pages in four stages between August 15, 2011, and November 15, 2011. With the last stage, the University produced a 12-page privilege log.

On February 14, 2012, with her trial in federal court two months away, Bichindaritz filed suit against the University in superior court, asserting civil rights claims under Washington law.

On February 23, 2012—a date significant to the statute of limitations issue in this appeal—she amended her complaint to add a cause of action under Washington's Public Records Act, chapter 42.56 RCW, for failing to provide documents in a timely manner between September 9, 2009, and November 15, 2011.

On April 20, 2012, after a bench trial, judgment was entered against Bichindaritz in her federal lawsuit.

On July 16, 2012, the trial court in this matter dismissed Bichindaritz's civil rights claims as barred by res judicata and collateral estoppel.

The order of July 16, 2012, also dismissed "all claims associated with or arising from the University's response to Plaintiff's September 9, 2009 public records act request" as time barred under the one-year statute of limitations in RCW 42.56.550. This time bar applied to the University's response to the initial request that was closed on February 7, 2011. It did not bar suit on any violations committed by the University when it resumed the processing of documents on June 6, 2011, because that date was within one year before February 23, 2012.

4

On July 1, 2013, the superior court ordered the University to respond to a request for production of 485 pages of documents that Bichindaritz believed had been improperly redacted. On July 13, 2013, the University submitted a memorandum explaining that 384 of those pages had not been redacted, 58 of those pages had already been provided in response to Bichindaritz's 2009 request, and the remaining pages had been properly redacted. On August 2, 2013, after reviewing 43 documents in camera, the trial court released a number of e-mails that the court determined had been improperly redacted.

The trial court then held a trial by affidavit as allowed by RCW 42.56.550 and ruled against the University. The court entered extensive findings and conclusions adapted from a set proposed by Bichindaritz. The court was particularly troubled by the redaction of an e-mail that had been sent from one professor to another on January 11, 2008, during the tenure decision process. It had been provided to Bichindaritz in redacted form on November 3, 2011. The redacted portion stated, "I believe that the nursing person made the comments about gender. The nursing person who was on Isabelle's committee hinted that we might be picking on Isabelle's teaching because she was a woman." Bichindaritz believed this e-mail might have provided critical support for her gender discrimination lawsuit in federal court if she had obtained it in unredacted form before trial.

The superior court ultimately determined that the University violated the Public Records Act by waiting until the end of 2011 to produce the 12,000 documents "that were assembled and ready for distribution by October 2009."

Clerk's Papers at 1149. The court concluded that the University acted in bad faith with a self-serving motive to delay production long enough so the records would not be available for use in Bichindaritz's federal lawsuit. Conclusion of Law 2.7; Conclusion of Law 2.17. The court imposed a $723,290.50 penalty ($0.50 per page for each day of delay after June 7, 2011) and awarded Bichindaritz $102,958.03 in attorney fees. The University appeals.

The parties agree that de novo review is appropriate for the interpretation and construction of the Public Records Act. Bichindaritz, however, contends that the findings of fact should be reviewed for substantial evidence. See West v. Wash. State Dep't of Natural Res., 163 Wn. App. 235, 245, 258 P.3d 78 (2011), review denied, 173 Wn.2d 1020 (2012); Marriage of Rideout, 150 Wn.2d 337, 350-51, 77 P.3d 1174 (2003).

As indicated by RCW 42.56.550(3), review of a trial court's decision in a Public Records Act matter is generally de novo. Fisher Broad.-Seattle TV LLC v. City of Seattle, 180 Wn.2d 515, 522, 326 P.3d 688 (2014) ("Our review of both the agency action and the court opinions below is de novo.") Whether the more deferential review of findings of fact for substantial evidence is proper to apply in a public records case where facts are in dispute need not be decided in this case. Here there is no factual dispute about what the documents say and when they were disclosed. The dispositive issue is whether the trial court erred by faulting the University for taking five months to deliver the final 12,000 documents after Bichindaritz renewed her request on June 6, 2011. Conclusion of Law 2.17 ("By reactivating the 2009 PDA request on June 6, 2011, plaintiff's request could

6

have been met the next day, June 7, 2011, given completed assembled documents"); Conclusion of Law 2.21.

The University agrees that all documents responsive to Bichindaritz's request had been assembled by the end of October 2009 and remained in that state when Bichindaritz reactivated her request on June 6, 2011. What the University challenges is the court's conclusion that as soon as the documents were assembled, they were ready to be produced.

The University is right. While the statute requires that responses to requests for public records shall be made "promptly," it also expressly recognizes that an agency may need additional time to determine whether any part of the information requested is exempt:

> Additional time required to respond to a request may be based upon the need to . . . determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request.

RCW 42.56.520. By the time Bichindaritz closed her 2009 request in February 2011, the University had assembled about 25,000 pages but had reviewed only about half of them for applicable exemptions. It was unreasonable to expect the University to *produce* the remaining 12,000 pages the same day Bichindaritz reopened her request simply because it had already *assembled* those documents.

Bichindaritz does not argue otherwise. In fact, the record reflects her recognition that review and redaction of records is a time-consuming process separate from assembling them. The University's first set of interrogatories asked Bichindaritz, among other things, to identify what would have been a

7

reasonable estimate of time to produce the records referred to in her public records request. Bichindaritz answered by observing that the last half (the 12,000 pages) had been processed within 6 months, whereas the production of the first half had been "spread in time over approximately one year and half. It seems to me that a reasonable estimate would be 6 months from the date of request." Clerk's Papers at 1413, 1415. In other words, Bichindaritz admitted the last 12,000 pages were timely produced and that she was only complaining about the amount of time it took the University to deliver the first six stages—the 14 months following her initial request in September 2009.

Bichindaritz contends that the finding of a delay that violated the Public Records Act should be sustained on the basis that 14 months was unreasonable. But delays during that 14-month period occurred more than one year before February 23, 2012, the date Bichindaritz filed suit under the Act. Therefore they may not be considered in deciding whether the University violated the Public Records Act, as such claims are time barred under the one-year statute of limitations in RCW 42.56.550. The trial court so ruled in the order of partial summary judgment entered on July 16, 2012. The trial court never modified that order, although asked by Bichindaritz to do so. As can be seen by comparing the findings and conclusions proposed by Bichindaritz with the findings and conclusions actually entered by the trial court, Bichindaritz wanted the trial court to withdraw that interlocutory order of partial summary judgment. But the trial court deleted from its findings and conclusions the language proposed by Bichindaritz. Compare Clerk's Papers at 1139-40 (Conclusion of Law 2.1) and

Clerk's Papers at 1149 ("Conclusion") with Clerk's Papers at 2016-17 (Proposed Conclusions of Law 2.2, 2.3) and Clerk's Papers at 2028 (Proposed Conclusion 2.27.2.) See also Clerk's Papers at 2347, 2371 (plaintiff's trial brief requesting reconsideration of the order on partial summary judgment). The unappealed order of partial summary judgment remains in effect as a conclusion of law precluding redress of violations that may have occurred before February 23, 2011. The court's findings and conclusions discuss delays in the initial six stages of production (2009-2010), but only as an aggravating factor for the penalty. The court decided a *violation* had occurred based only on the five-month production of the final 12,000 pages between June and November 2011. And as discussed above, that finding of violation rests on the unsustainable assumption that documents are ready to be produced as soon as they are assembled.

Bichindaritz suggests that the finding of violation can be sustained on the basis that the University "repeatedly missed production deadlines." The University did miss several self-imposed deadlines between June 2011 and November 2011. But the Act only demands that agencies provide reasonable estimates for production. Forbes v. City of Gold Bar, 171 Wn. App. 857, 864, 288 P.3d 384 (2012) ("The operative word is 'reasonable.'"), review denied, 177 Wn.2d 1002 (2013). The Act does not necessarily require an agency to comply with its own self-imposed deadlines. The question is whether the agency "was acting diligently in responding to the request in a reasonable and thorough manner." Hobbs v. State, ___ Wn. App. ___, ___, 335 P.3d 1004, 1011 (2014). Bichindaritz does not argue, and the record does not indicate, that the University

9

was less than diligent in completing the review and redaction of the final 12,000 pages. Indeed, as noted above, Bichindaritz admitted in discovery that six months was a reasonable time.

Bichindaritz cites <u>Violante v. King County Fire District No. 20</u>, 114 Wn. App. 565, 570-71, 59 P.3d 109 (2002). But the <u>Violante</u> court was concerned with an agency that tried to excuse its nonresponsiveness on the basis that the requester had other means of access to the documents. <u>Violante</u> does not suggest that an agency's failure to meet its own estimated date of production automatically violates the Public Records Act.

A more useful precedent is <u>West v. Department of Licensing</u>, 182 Wn. App. 500, 331 P.3d 72, <u>review</u> <u>denied</u>, 339 P.3d 634 (2014). West alleged that the Department had violated the Public Records Act by failing to reasonably search for, identify, and produce records related to motor vehicle fuel tax payments to Indian tribes. The Department responded in installments and not always within its estimates of time needed. After nine months, the Department had delivered almost 50,000 pages and still had as many as 10,000 pages to review. The trial court entered summary judgment for the Department. This court affirmed, recognizing that when a request for records is broad in scope and the number of responsive records is substantial, an agency must be allowed time to review the records "to determine whether they were responsive and whether they should be produced, disclosed, redacted, or withheld." <u>West</u>, 182 Wn. App. at 512.

Bichindaritz does not refute the University's assertion that locating and assembling the responsive documents was only the beginning; reviewing and redacting them was the time-consuming part of the process. Bichindaritz does not meaningfully distinguish this case from West. The trial court did not conclude, and neither do we, that the University was disingenuous when it advised her that the process was taking more time than originally estimated.

The trial court erred in concluding that the University violated the Act. It is unnecessary to address other issues discussed in the briefs. Those issues include: whether a penalty can be imposed on a per-page basis as opposed to per-record; whether this court should take judicial notice of the federal court's ruling that the nondisclosure of the "nursing person" e-mail was immaterial; whether the University's request for an evidentiary hearing should have been granted; whether the 12,000 pages should have been grouped as a single "public record" when calculating the penalty; whether the trial court erred in imposing post-judgment interest on the penalty; and whether the award of attorney fees is sufficiently supported by meaningful findings and conclusions.

We reverse the judgment for the penalty of $723,290.50 and the judgment for attorney fees and costs.

Becker, J.

WE CONCUR:

11