IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TED A. THOMAS and DEBRA A. THOMAS, | ) ) ) | No. 76644-9-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| SPECIALIZED LOAN SERVICING, LLC; RTS PACIFIC, INC., a Washington Corporation (now in receivership); RMS MORTGAGE ASSET TRUST 2012-1, U.S. BANK as Trustee; RMS RESIDENTIAL PROPERTIES, LLC; RESIDENTIAL MORTGAGE SOLUTION, LLC; PRIME ASSET FUND, LLC, | ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: August 13, 2018 |

ANDRUS, J. — Ted and Debra Thomas (Thomas) appeal the summary judgment dismissal of their claim to set aside a trustee's sale as well as their claims for intentional and negligent misrepresentation and violations of the Consumer Protection Act (CPA). We affirm.

## FACTS

Thomas defaulted on his mortgage and his home was sold at a foreclosure sale in July 2014. In December 2015, Thomas filed the complaint,

naming as defendants three related entities and alleged noteholders: Residential Mortgage Solutions (RMS), RMS Residential Properties, and RMS Mortgage Asset Trust (collectively RMS Entities). Thomas also named the loan servicer, Specialized Loan Servicing (SLS).[1]

Thomas's complaint asked the court to set aside the trustee's sale based on alleged violations of the deeds of trust act (DTA), chapter 61.24 RCW. Thomas alleged that his note had been improperly assigned and it was unclear if the purported beneficiary was the actual noteholder. He also asserted that beneficiary declarations and appointments of successor trustees associated with the foreclosure were invalid. Thomas further claimed that the beneficiary and servicer committed intentional and negligent misrepresentation and violated the Consumer Protection Act (CPA), chapter 19.86 RCW.

After filing the complaint in December 2015, Thomas did not conduct any discovery for nearly a year. On November 28, 2016, the RMS Entities and SLS jointly noted a hearing on a motion for summary judgment and set argument on the motion for February 3, 2017. The following week, on December 6, 2017, Thomas propounded his first discovery requests. The RMS Entities and SLS filed their motion for summary judgment with supporting documentation on January 6, 2017. They answered Thomas's discovery requests on January 9 and January 13, 2017.[2]

---

[1] Thomas also named the trustee, Regional Trustee Services (in receivership), and a third party, Prime Asset Fund, in the complaint. These parties have apparently not participated in the action. Thomas appears to concede that he never served Prime Asset Fund.

[2] Thomas granted the defendants' request for a one-week extension to respond to his discovery requests.

In support of their motion for summary judgment, Michael Ward, an SLS vice president, testified by declaration that Thomas's note had been assigned three times. The original lender, Imperial Lending, LLC, transferred the note to RMS in 2007. RMS assigned the note to a subsidiary, RMS Properties, in 2008. RMS Properties then transferred the note to RMS Trust in 2012. SLS serviced the loan throughout its life and held limited powers of attorney to act for RMS Properties and RMS Trust. Ward explained that SLS, as agent for the noteholder, appointed the trustee who obtained a beneficiary declaration before recording a notice of sale. The RMS Entities and SLS submitted numerous supporting documents, including a copy of the note, which was endorsed in blank, copies of the deed of trust, power of attorney agreements, the beneficiary declarations, a 2011 appointment of successor trustee, and the servicing records.

At the hearing on the summary judgment motion, the RMS Entities and SLS relied on this record to argue that Thomas failed to establish a question of material fact as to any of his claims. Thomas asserted that the RMS Entities and SLS provided insufficient and contradictory responses to discovery and their documentation was not credible. The trial court granted summary judgment to the RMS Entities and SLS and denied Thomas's motion for reconsideration. Thomas appeals.

## ANALYSIS

We review an order on summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. Jackowski v. Borchelt, 174 Wn.2d 720, 729, 278 P.3d 1100 (2012). In a summary judgment motion, the moving party bears the initial burden of showing that there is no genuine issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this initial showing, the burden shifts to the nonmoving party to produce specific facts showing that there is a genuine issue for trial. Id. at 225-26. Summary judgment is only appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

Thomas asserts several theories to argue that the trial court erred in dismissing his claims. As to his DTA claim, his primary argument appears to be that the RMS Entities and SLS provided insufficient documentation to establish that the RMS Entities actually held the note.[3]

Under the DTA, the beneficiary is the entity that holds the note. RCW 61.24.005(2); see also Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 89, 285 P.3d 34 (2012). Before conducting a foreclosure sale, a trustee must have proof that the beneficiary actually holds the note on which the trustee is foreclosing. Bain, 175 Wn.2d at 102. "A declaration by the beneficiary made under the

---

[3] Thomas alleges that the RMS Entities and SLS have not been truthful about the loan and have falsified documents since the loan's inception. He claims that SLS and the trustee demanded excessive monthly payments, MERS (Mortgage Electronic Registration Systems) improperly appointed a successor trustee and assigned the note, and SLS made the process of

- 4 -

penalty of perjury stating that the beneficiary is the actual holder of the promissory note. . . shall be sufficient proof."[4] Former RCW 61.24.030(7)(a) (2009).

Ward testified that RMS acquired the loan from the original lender in 2007. The note was subsequently transferred to RMS Properties and later to RMS Trust. Ward declared that, as servicer for the RMS Entities, SLS received the "wet ink" note from them. In response to an interrogatory seeking information on the whereabouts of the original note, the RMS Entities stated that the original note was in possession of U.S. Bank per a custodial agreement with that entity.

Documents in the record support Ward's testimony. The note was indorsed in blank by Imperial Lending, making it payable to the bearer. See RCW 62A.1-201(21)(a); RCW 62A.3-205(b). A sworn declaration executed February 11, 2011, identifies RMS Properties as the holder of the note. A declaration executed on August 21, 2013, identifies RMS Trust as the noteholder on that date. A custodial agreement between RMS and Wachovia Bank, predecessor in interest to U.S. Bank, authorizes the bank to hold physical possession of RMS's residential mortgage loans. Thomas points to nothing in the record that contradicts this evidence and thus fails to raise a question of material fact on this point.

---

applying for a loan modification unnecessarily difficult. Thomas presents no legal argument as to these allegations, as required by RAP 10.3(a)(6). We decline to consider them.

[4] The legislature made minor changes to RCW 61.24.030(7) in 2018. See LAWS OF 2018, ch. 306, § 1. The amendment is not at issue here.

Thomas also challenges the validity of the beneficiary declarations and appointment of successor trustee. RMS Properties appointed a successor trustee and executed a beneficiary declaration in February 2011. These documents were signed by an SLS employee as attorney in fact for RMS Properties. In August 2013, RMS Trust executed a new beneficiary declaration. This document was also signed by an SLS employee.

Thomas asserts that the 2011 appointment of successor trustee and the 2011 and 2013 beneficiary declarations are invalid because they were signed by an SLS employee rather than an employee of any RMS Entity. The argument fails because SLS was acting as an agent of RMS Properties and RMS Trust when its employees executed these documents, permissible actions under the DTA.

An agent may act on behalf of a noteholder. Bain, 175 Wn.2d at 106. "[A]n agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control." Id. (internal quotation marks omitted) (quoting Moss v. Vadman, 77 Wn.2d 396, 402-03, 463 P.2d 159 (1970)).

Here, it is undisputed on this record that RMS Properties appointed SLS to act as its attorney in fact in March 2009 and RMS Trust did the same in July 2012. The principal-agent relationship was memorialized in written contracts granting SLS limited power of attorney to act for the RMS Entities in foreclosure matters. The 2009 limited power of attorney authorized SLS to act as attorney in

fact "in any manner necessary and proper to exercise the servicing and administrative powers set forth in the Servicing Agreement." The servicing agreement authorized SLS to institute foreclosure proceedings, and to execute instruments on behalf of the owner to settle mortgage loans. The 2012 limited power of attorney authorized SLS to prepare all documents necessary under state law to complete a nonjudicial foreclosure. The written power of attorney agreements are clear manifestations of the RMS Entities' consent that SLS would act on their behalf in executing all required documentation to complete nonjudicial foreclosure sales.

The RMS Entities produced prima facie evidence that they held the note at the relevant times and SLS, as their agent, executed foreclosure documents on their behalf. Because Thomas failed to rebut this evidence, he did not establish a question of material fact as to the identity of the noteholder or the validity of the challenged documents. The trial court did not err in dismissing Thomas's claim to set aside the trustee's sale.[5]

Thomas also challenges the dismissal of his claim for negligent and intentional misrepresentation. He argues that the RMS Entities and SLS misrepresented the identity of the noteholder, the existence of SLS's agency relationship, and their authority to foreclose. But Thomas's failure to establish any DTA violation is fatal to this claim.

---

[5] Because of our resolution of this issue, we do not reach the parties' further arguments that Thomas's DTA claim was barred by waiver or was properly dismissed for failure to join the current property owner as an indispensable party.

Thomas next alleges that SLS misrepresented the date the foreclosure sale would occur.[6] The foreclosure sale was initially set for April 11, 2014. Thomas filed for bankruptcy and, as a result, the sale was continued to July 25, 2014. When Thomas's bankruptcy petition was dismissed on July 16, he submitted a new application for a loan modification to SLS. Thomas asserts that he called SLS on July 21 to check on the status of his application. According to Thomas, a representative told him SLS had received his application and had continued the foreclosure sale to September 19. SLS disputes that it told Thomas the sale had been continued. Assuming the alleged misrepresentation occurred, SLS argues that Thomas fails to show reliance.

To establish a claim for negligent or intentional misrepresentation, the plaintiff must show, among other elements, that the defendant made a false representation and, because the plaintiff reasonably relied on the false information, the plaintiff suffered damages. See Lawyers Title Ins. Corp. v. Baik, 147 Wn.2d 536, 545, 55 P.3d 619 (2002) (negligent misrepresentation); Carlile v. Harbour Homes, Inc., 147 Wn. App. 193, 204-05, 194 P.3d 280 (2008) (intentional misrepresentation). Thomas contends that because he relied on SLS's alleged statement that the sale had been continued until September, he took no action to restrain the sale in July. Thomas provides no specifics as to

---

[6] Thomas also asserts that SLS and the RMS Entities engaged in a pattern of misrepresentation dating back to 2008. He does not expressly rely on these older events as a basis for his misrepresentation claim or make any argument as to the timeliness of such a claim. An action for misrepresentation must be brought within three years of discovery of the misrepresentation. Davidheiser v. Pierce County, 92 Wn. App. 146, 156 n.5, 960 P.2d 998 (1998) (citing RCW 4.16.080(4)). We decline to consider alleged misrepresentations that occurred more than three years before Thomas filed his complaint.

what action he would have taken had he been aware of the July sale date and he points to no evidence that he made efforts to restrain the sale in September. Nor did Thomas bring a prompt post-sale challenge; although the sale took place in July 2014, Thomas did not commence this action until December 2015. Because Thomas fails to show how he relied on any alleged misrepresentation relating to the date of the foreclosure sale, the trial court did not err in dismissing his claim for misrepresentation.

Next, Thomas challenges the dismissal of his CPA claim. To establish a claim under the CPA, a plaintiff must show five elements: (1) an unfair or deceptive act or practice (2) that occurs in trade or commerce, (3) a public interest impact, (4) an injury to plaintiff in his or her business or property, and (5) causation. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531, 533 (1986). Thomas alleges that the respondents engaged in unfair or deceptive practices by executing the beneficiary declarations and appointment of successor trustee through an attorney-in-fact and failing to prove that the RMS Entities actually held the note. But, as discussed above, Thomas fails to raise a material question of fact as to these points.

Thomas also asserts that the respondents engaged in an unfair or deceptive practice by misrepresenting the date of the foreclosure sale. A misrepresentation of fact may be an unfair or deceptive practice for purposes of a CPA claim. Indoor Billboard/Wash., Inc., v. Integra Telecom of Wash., Inc., 162

Wn.2d 59, 83, 170 P.3d 10 (2007). The plaintiff must show that but for the misrepresentation, the plaintiff's injury would not have occurred. Id.

Here, even if, as Thomas asserts, SLS misrepresented the date of the foreclosure sale, Thomas fails to show a causal link between the misrepresentation and his injury. Thomas alleges two injuries: the loss of his home and the attorney fees he has incurred to bring the present action. But Thomas does not contest that he defaulted on the loan payments and did not cure the default. The trial court correctly concluded that Thomas's default, and not any misrepresentation as to the sale date, was the "but for" cause of the loss of Thomas's home.

Nor do Thomas's attorney fees support his CPA claim. Attorney fees necessary to investigate a deceptive business practice may constitute injury within the meaning of the CPA. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 62, 204 P.3d 885 (2009). Here, however, Thomas has not established a question of material fact as to any unfair or deceptive practice that required investigation. Attorney fees divorced from a deceptive business practices do not constitute injury under the CPA. See id. at 62-63.

We hold that Thomas has not established an issue of material fact as to any of his claims. The trial court did not err in dismissing Thomas's claim under the DTA, his claims for intentional and negligent misrepresentation, and his CPA claim.

Thomas contends the trial court erred in denying his motion for reconsideration. He argues that SLS and the RMS Entities provided late and

incomplete responses to discovery, thereby preventing him from establishing his claim. We review the denial of a motion for reconsideration for abuse of discretion. West v. Dep't of Licensing, 182 Wn. App. 500, 516, 331 P.3d 72 (2014). The trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Id. A decision is manifestly unreasonable if it is outside the range of acceptable choices. Id.

Thomas raised the lack of adequate discovery responses during the summary judgment hearing, and the trial court rejected it. The court stated that the case had been pending for over a year and nothing prevented Thomas from conducting further discovery. The court noted that Thomas had not filed a motion to compel or a motion to continue the summary judgment hearing. And Thomas provided only speculation that further discovery would uncover a genuine question of material fact. In his motion for reconsideration, Thomas reasserted his argument concerning late and incomplete discovery responses and asked the court for leave to file a motion to compel. The court denied the motion without comment.

In this case, the trial court's decision was not manifestly unreasonable. As the trial court stated, nothing prevented Thomas from timely conducting further discovery, moving to compel, or moving to continue the hearing on summary judgment.

The respondents request attorney fees on appeal based on the attorney fee provision in the deed of trust. Attorney fees may be awarded where authorized by statute or contract. Aiken v. Aiken, 187 Wn.2d 491, 506, 387 P.3d

680 (2017). In this case, the deed provides that the lender is entitled to recover reasonable attorney fees "in any action or proceeding to construe or enforce any term" of the deed. The present appeal is an action to enforce the deed, as it stems from Thomas's complaint that the respondents had no authority to foreclose against him. See Podbielancik v. LPP Mortg. Ltd., 191 Wn. App. 662, 673, 362 P.3d 1287 (2015). We grant attorney fees to the respondents based on the deed.

Affirmed.

_Andrus, J._

WE CONCUR:

_Leach, J._                    _Schindler, J._